## THE BRANCH OF THE BANK OF THE STATE, AT MONTGOMERY, use, &c. v. GAFFNEY.

1. Where an action is brought upon the indorsement of a promissory note, the plaintiff's right to recover cannot be made out by proof of a fraudulent concealment, or misrepresentation by the indorser, in respect to the ability of the maker to pay. To make such a fraud available as a ground of action, it must be specifically declared on, in a suit brought by the party defrauded.

2. A promissory note payable in bank, is by statute made subject to " the rules of the law merchant, as to days of grace, demand and notice, in the same manner that inland bills of exchange," &c. are; consequently, where such paper is indorsed, either regularly or irregularly, the indorser must be charged by a demand and notice.

3. Where commercial paper, *past due*, is indorsed, it cannot be assumed as a *legal conclusion*, that a demand of payment should be made by the holder, and notice of its dishonor given within any *precise time;* but in such case, all that can be said is, that the demand must be made. and the notice given, in a reasonable time. The facts must be ascertained by the jury, and their verdict should be influenced by such legal analogies as are established.

4. An action may be brought without a previous request, where a party promises to pay on demand, yet in the case of indorsed paper, the writ, or summons, by which a suit thereon is commenced, does not authorize the officer to whom it is addressed, to receive the money, or contemplate payment otherwise than by legal coercion ; consequently it is not a sufficient demand to make a notice, which is merely consequential, avail any thing.

Writ of Error to the Circuit Court of Lowndes.

This was an action of assumpsit, at the suit of the plaintiff in error, against the defendant, as the guarantor of a promissory note. The declaration contains six or seven counts, but as the fourth is the only one in question, we will not notice the others. That count alledges, that the defendant, on the 20th of February, 1838, being indebted to Thomas Bryant in his life-time, in the sum of "two thousand dollars, transferred, delivered, and indorsed," a promissory note, " da-

ted the 17th January, 1837, due twelve months after date, to the Cashier of the Branch of the Bank of the State of Alabama, at Montgomery, or bearer, for fifteen hundred dollars, for value received, negotiable and payable at said Bank, signed by one Joseph J. Burt, Edward W. Gilbert, and Jas. W. Taylor." And the defendant, at the time of the transfer mentioned above, represented to the plaintiff, that the makers of the note were solvent, and the same could be collected of them; when, in fact and in truth, they were wholly insolvent, "and of this fact the said defendant was fully advised and cognizant," at, &c. And the "plaintiff avers that he sued the said makers, to the first court after he received the said note," at, to wit, &c., and at, &c. "judgment was obtained against them for the principal of said note, interest and costs;" and upon that judgment an execution was issued, on, &c., and placed in the hands of the sheriff of, &c., who returned the same "no property" found, The plaintiff further avers, that the makers of the note were, at the time of the transfer and indorsement, wholly insolvent; of all which the defendant had notice, at, &c., and therefore became liable to pay, &c. The defendant demurred to this count, and his demurrer was sustained; and the cause was tried on issues joined on some of the other counts.

At the trial, a bill of exceptions was sealed at the instance of the plaintiff, from which it appears that the note of which the defendant is sought to be charged as an indorser was made at this time, by the parties, and for the amount alledged, that the Cashier of the plaintiff is its payee, and that it is negotiable and payable as stated in the fourth count. It was also proved, by Daniel Royall, that, as the agent of Thos. Bryant, (for the use of whose administrator the present suit is brought,) he held a note of $1500, payable to the intestate, and due on the 15th January, 1838, made by Edmund J. Felder and the defendant; that witness and defendant went to Wetumpka about the 1st January, 1838, to make an arrangement about its payment. In an interview with Felder, the latter represented that he was broke, and proposed to the defendant, to give the note, upon the indorsement of which this action is brought, in exchange for that which the witness then held. Witness refused to receive it, when the de-

fendant said, if the makers were not good he was, and thereupon witness agreed to the exchange, if Felder and the defendant would indorse it.    To carry out this arrangement, all parties were to meet at the house of witness, in Lowndes county, by the 15th January, 1838 ; but they did not meet, and it was not consummated until the middle of February, when Felder and defendant made the indorsement, on which the latter was sued.    The makers of this note were sued on the 12th March next after its indorsement, and witness ascertaining that the money would not be made, notified the defendant that he would be looked to for payment, who replied, that he would avail himself of the want of diligence to charge him as indorser.    There was no proof of any demand of the makers, protest or notice to the defendant, other than stated above.

The record, showing the commencement of the suit against the makers of the note, as alledged, the recovery of judgment, issue and return of execution was adduced, and laid before the jury as evidence.

The court instructed the jury, that there had not been sufficient diligence used to charge the defendant.    Thereupon the plaintiff prayed the court to charge the jury, that if they believed a suit was instituted against the makers of the note, to the first court after the indorsement to which they could have been sued, and defendant was informed of this fact in a reasonable time thereafter, and was fully advised of the whole progress of the cause, and that the execution issued upon the judgment was unproductive, then he had sufficient notice to charge him on his indorsement.    This prayer for an instruction was denied by the court.    A verdict was returned for defendant, and judgment was rendered accordingly.

J. A. ELMORE and T. WILLIAMS, for the plaintiff in error, contended—1. That the fourth count alledges a fraudulent concealment, if not a representation as to the solvency of the makers of the note.    [2 Porter's Rep. 411 ; 3 Ala. Rep. 648 ; 5 Id. 596 ; 7 Id. 956.]

2. The charge given, and that refused, must be considered applicable to all the facts in evidence ; and under the sev-

enth count, not only a demand and notice, but an excuse for them might be shown. [7 Porter's Rep. 175; 7 Ala. Rep. 384.]

3. It is admitted that there should be a demand and notice of non-payment, in case of the irregular indorsement of commercial paper, but the question of due diligence should be left to the jury, under all the attendant circumstances. It is apparent from the evidence in the present case, that no injury resulted from the delay. ]3 Ala. Rep. 610, 635, 648.]

4. The defendant's knowledge of the commencement, progress and termination of the suit, is in itself evidence of demand and notice; on demurrer, judgment should have been given for the plaintiff, and the charge given, passed upon the evidence as if a demurrer had been interposed. [22 Maine Rep. 164; 1 Bay's Rep. 324; 1 McC. Rep. 202; 1 Hill's (Law,) Rep. 56; 1 Richardson (Law) Rep. 397; 6 Ala. Rep. 865; 1 Id. 511.]

5. The note indorsed by defendant was accommodation paper, made to be discounted at bank. By its indorsement, the defendant became, in legal effect, the drawer of a bill accepted by the makers for his accommodation, [1 Porter's R. 313; 7 Ala. Rep. 256;] and as such is not entitled to notice of its nonpayment. A note payable to a Cashier in the hands of one deriving no title from the Bank, imports on its face, that it is without consideration, [7 Ala. Rep. *supra;*] and this being so, he is not entitled to notice. [1 Porter's R. *supra.*] The defendant cannot claim an exemption from these principles, because he is a regular indorser.

N. Cook, with whom was A. Gilchrist, for the defendant, insisted, that admitting the truth of every thing alledged in the fourth count, and still it did not authorize a recovery against the defendant. There is no fraudulent representation alledged, nor does it appear that the plaintiff was deceived. The action is upon the indorsement and not upon the fraud. In fact the note was taken up on the credit of defendant's name, and not his representation. If there was a fraudulent representation, plaintiff acquiesced in it, by retaining and suing on the note. [5 Ala. Rep. 596; Story on Con. 108-9-10-11.]

The defendant is sought to be charged upon the irregular indorsement of a negotiable note, and the holders must employ the same diligence as if he was a regular indorser, [3 Ala. Rep. 610, 648;] and this principle applies, although the note was assigned after due, [7 Porter's Rep. 175,] or in payment of a pre-existing debt. [6 Ala. Rep. 668.] Even an express agreement that a note shall not be sued, until after a certain date, does not dispense with notice of non-payment. [Chit. on Bills, 433, 434.]

The rule of the law merchant requiring demand and notice is imperative, and can only be excused where a bill is drawn without funds in the hands of the drawee, [Chitty on Bills, 435, 436;] and the reasonableness of notice is a question of law. [Clay's Digest] There is nothing in the facts of this case which relieve it from the operation of the rule requiring prompt notice. Being informed that the suit against the makers of the note would be unproductive, and of every thing that transpired from the commencement to the termination of that suit, certainly did not dispense with notice of demand and refusal. The indorser must be informed that the holder of the paper looks to him for payment. [Chitty on Bills, 493-4.] It cannot be assumed that the court erred in the instruction to the jury, but the party excepting should have shown it. [9 Porter's Rep. 195.] If it were allowable to indulge presumptions, the facts repel the idea of error.

COLLIER, C. J.—It may be, that the fourth count shows a misrepresentation or concealment in respect to the ability of the makers of the note in question to pay it, so as to subject' them to an action for the fraud. Be this as it may, it is a point we will not stop to consider, as it cannot avail the plaintiff in the case at bar. The suit is brought upon the indorsement of the defendant, not to enforce a collateral liability, wholly independent of it; consequently the question of *frau vel non*, is an inquiry without the issue. Besides, it may be asked, if misrepresentation or concealment are imputable to the defendant, who has been prejudiced, and who did he intend to defraud? Certainly not the payee of the note, who is the plaintiff in this action; for it is not pretended that the

Bank ever was its proprietor, much less that it received the note in consequence of any influence or agency of the defendant.

If the agent of Bryant was induced by the fraud of the defendant, to receive the note, upon the indorsement of which the present suit is brought, then it is clear that the action for a fraudulent representation or concealment should have been brought in the name of Bryant's personal representative. The intestate alone was affected by the *mala fides*, and·if it gave him a right of action against the defendant, that right did not enure to others, who might acquire the note under other circumstances, either as a payee or otherwise. A tort is not transmissible, so as to invest an assignee with the right to sue the wrong doer in his own name. This rule applies in all force to a fraud, whether practiced by means of conduct, either active or passive.

It is shown by the proof, that Bryant did not become the proprietor of the note until after its maturity, and upon this hypothesis, we will consider the second point in the cause. By a statute passed in 1832, it is enacted, that bonds and other instruments payable in bank, shall be governed by the rules of the law merchant, as to days of grace, demand and notice, in the same manner that bills of exchange and notes, payable in bank, now are. [Clay's Dig. 383, §§ 13, 17.] In Kennon v. McRae, 7 Porter's Rep. 175, it was held, that the fact of a note being over due when negotiated, did not dispense with the demand and notice ; that it was the duty of an indorser to demand payment of the maker, within a reasonable time after the transfer to him of paper, and if it was refused, to give notice of nonpayment to the indorser. The undertaking of the indorser is made upon these *considerations*, and unless they are performed, it cannot become absolute, so as to entitle the holder to his action against him : and in this respect, there is no difference between paper indorsed before, and after it is due. See further the cases there cited, and Adam's Adm'r. v. Torbert, 6 Ala. R. 865.

The transfer of a note "not payable in bank," which does not pass the legal title, is not embraced by the act of 1828, to define the liability of indorsers, but is a warranty that the note may be collected of the maker by due diligence. What

constitutes diligence, has been held to be a question of fact for the jury, under all the circumstances of the case; but suit must be brought to the first term of the court to which it could be instituted after the maturity of the note, unless excused by some sufficient reason, such as the insolvency of the maker, &c. [Jordan v. Garnett, 3 Ala. Rep. 610; Hall & Chilton v. McCampbell, Id. 633; Nesbit v. Bradford, 6 Ala. Rep. 746.]

In Milton v. DeYampert, 3 Ala. Rep. 648, the defendant was sued upon his *indorsement* of a *negotiable note*, of which he was not the legal proprietor, and the question was, what was the character of his undertaking? Was it absolute or conditional? If the latter, what was the condition? We held, that he was not liable as a co-maker, but as an indorser, and as the liability attaching to an irregular indorsement of a note merely *assignable*, was similar to that with which the payee was chargeable upon his indorsement, the same rule would apply *mutatis mutandis* to a note payable in bank. *Further*, that "a similar degree of diligence is necessary to charge one who becomes bound by an imperfect indorsement, as is necessary to charge an actual indorser." *Again*, that although the contract of the defendant in that case, was "not an indorsement in the technical sense of that word, yet it is to be governed by similar rules, and his liability was complete as soon as the maker made default, and notice was given of the refusal or neglect to pay." It was however, then left an open question, whether it was not allowable to show, that due diligence, otherwise than according to the requirements of the law merchant had been used to charge the indorser; or ▬▬▬ ▬▬er, if no injury resulted from the failure to give notice, the fact might not be proved as an excuse.

Subsequently, in Lake v. Gilchrist, 7 Ala. Rep. 955, we said, that where there is an irregular indorsement of commercial paper, the indorser must be charged by demand and notice. This conclusion, we think, is not inconsistent with principle, but harmonizes with the analogies of the law, and commends itself as furnishing a certain rule, adapted to all cases.

Where, however, paper past due is indorsed, it cannot be

assumed as a legal conclusion, that a demand should have been made, and notice of its dishonor given, within any precise time. It is certainly the duty of the indorser, who become the proprietor of a note after its maturity, to demand payment of the maker within a reasonable time after the transfer to him of paper, and if refused, to give notice of non-payment to the indorser. The undertaking of the indorser is made upon these conditions, and unless they are performed, it cannot become absolute, so as to entitle the holder to his action against him. See Kennon v. McRae, 7 Ala. Rep. 175, and cases there cited. Where a bill is indorsed after due, the indorsement is said to be equivalent to drawing a bill payable at sight. [Chitty on Bills, 9th Am. ed. 242.]  If this analogy be just, then it is impossible to lay down the measure of diligence which the indorsee, in such case, should employ, in order to secure the liability of his indorser. " With respect to the *time* when bills payable at, or *after sight*, should be presented for acceptance, the only rule, whether the bill be foreign or inland, and whether payable at sight or so many days after sight, or in any other manner, is, that they must be presented *within a reasonable time;* and as the drawer may sustain a loss by the holder's keeping it, any *great length of time*, it is advisable, in all cases, to present it as soon as possible ; but he is not obliged to present it by the first opportunity." [Chitty on Bills, 301.] The authorities all show, that the rule in respect to the payment of a bill payable at, or after sight, must necessarily vary with the circumstances of every case. Eyre, Ch. J., in Muilman v. D'-Equino, 2 Bla. Rep. 56, considering the law upon this point, said, " I do not see how the can lay down any precise rule on the subject ;" and *Heath*, *J.*, observed, "No rule can be laid down as to the time for presenting bills payable at sight, or a given time after." See further, Chitty on Bills, 301 to 305, and cases cited in the notes. The reasonableness of the time within which the demand or payment should have been made, and notice of the maker's default communicated to the defendant, depends upon the distance the respective parties reside from each other, the facility of communication, &c.; and consequently cannot be defined by law. In all such cases, the facts must be ascertained by the jury, and their

verdict. should be influenced by such legal analogies as are established.

It results from this view of the law, that the court should not have assumed that there had not been sufficient diligence used to charge the defendant on his indorsement; if the evidence had shown, that a demand had been made of the makers, payment refused, and notice thereof given to the indorser. The bill of exceptions affirms, that the only proof of a demand, was the institution of a suit upon [the note, which the plaintiff ascertaining would prove unproductive, notified the defendant, that he would be looked to for payment.

Where a party promises to pay on demand, it has been frequently held, that an action may be brought without a previous request, and the service of process is a sufficient demand. But that principle cannot apply to this case. Here, the undertaking of the defendant . was, that the note should be paid on presentment to the makers, and that if they . did not pay it, if duly presented, he would, if due notice of their default was given to him. The presentment for payment, then, was a condition precedent, and to warrant a recovery, against the defendant, the condition should have been complied with. [Chitty on Bills, 384, 385, note 1.] To make a demand good, it has been held, that it should be made by one who has the indorsed paper under his control, either as holder or agent; and that the demand contemplates a readiness to receive the money, if the party offers to pay it. [Chitty on Bills, *supra*, and 401, 402.] The writ, or summons, by which a suit is commenced, does not invest the officer to whom it is addressed, with authority to receive the money—it is not, in form, a request to pay it, nor does it suppose that the defendant therein will pay it, otherwise than by legal coercion. There was, then, no sufficient demand of the note, and the notice, which was merely consequential, can avail nothing.

There was no proof adduced at the trial, of which the bill of exceptions informs us, which dispensed with, or excused a demand and notice. It cannot be assumed from the form of the note, that it was not an operative security for money

in the hands of Felder—in fact, its indorsement by him and the defendant, may be regarded as an affirmation that it was recoverable of the makers.    In the Planters' and Merchants' Bank v. Blair and Morrah, 4 Ala. Rep. 613, it was held, that when a creditor receives a note from his debtor, with other persons as security, and the note is made payable to a bank, under the expectation that it will be discounted, the securities are not discharged by the refusal of the bank to discount it; but the creditor may sue in the name of the bank, or transfer the note to another, who may in like manner use the name of the Bank to collect the money.    See the cases there cited, which fully sustain the conclusion of the court.    There is, then, no pretence for saying, that the note in question was made for the accommodation, merely, of Felder, or the defendant, and that they could not be prejudiced by its non-payment.

This view is decisive of the case, and the judgment of the Circuit Court is affirmed.