THE PRESIDENT, DIRECTORS, &c., OF THE DORCHESTER AND MILTON BANK *vs.* THE PRESIDENT, DIRECTORS, &c., OF THE NEW ENGLAND BANK.

An agent has no right to delegate his authority to a sub-agent, without the assent of his principal; but, where from the nature of the agency, a sub-agent must necessarily be employed, the assent of the principal is implied; as, where a draft, payable at a distant place, is left with a bank for collection, it must be presumed, that it is intended to be transmitted to a sub-agent, at the place where it is paya ble, and not that the bank is to employ its own officers to proceed there, for the purpose of obtaining payment.

A bank, by which notes and bills, payable at a distant place, are received for collec-tion, without specific instructions, is bound to transmit or to cause the same to be transmitted, by suitable sub-agents, to some suitable bank, or other agent, at the place of payment, for that purpose; and where suitable sub-agents are thus employed, in good faith, the collecting bank is not liable for their neglect or default.

The D. and M. Bank, at Milton, in this state, having discounted a number of drafts, payable in Washington, in the District of Columbia, transferred the same, by a general indorsement, and without any specific instructions, to the N. E. Bank, in Boston, their general agents, for collection: the latter, having no correspondent in W., transferred the drafts, by a like general indorsement, to the C. Bank, in Boston, then and afterwards in good credit, for collection: the C. Bank transmitted the drafts to their correspondent, the Bank of the M., in W., for the same purpose: the C. Bank having subsequently failed, the N. E. Bank demanded the drafts of the B. of the M. before they became due: the latter refused to deliver the drafts, but collected them, and applied the pro-ceeds to the payment of a balance due them from the C. Bank; whereupon the N. E. Bank commenced an action against the Bank of the M. to recover the amount:—it was held, 1, that the N. E. Bank, having acted in good faith, and the C. Bank being a suitable agent, had authority to employ the latter to make the collection; 2, that no proof of general usage was necessary to give the N. E.

Bank such authority; and, 3, that, as the drafts were transferred to the N. E. Bank, by a general indorsement, that bank might transfer them in the same manner to the C. Bank, and were not bound to make a restricted indorsement.

THIS was an action of assumpsit, for the recovery of damages by the plaintiffs against the defendants, for not accounting for the proceeds of certain accepted bills of exchange, payable at Washington, in the District of Columbia, in six months from their respective dates, which had been received by the defendants from the plaintiffs, for collection.

On the trial, in this court, before *Wilde*, J., the following facts appeared in evidence. On the part of the plaintiffs, it was proved, that the bills in question had been discounted by them, and left, at different times during the months of October, November, and December, 1837, for collection, with the defendants, who were their general agents in Boston ; that the defendants had never paid over the amount of the bills, or returned them to the plaintiffs ; that the defendants always charged the plaintiffs a commission for making collections out of Boston ; and that the plaintiffs, on the 21st February, 1844, demanded of the defendants, that the proceeds of the bills should be placed to their credit.

On the part of the defendants, it was proved, that, from the year 1833, or 1834, until the failure of the Commonwealth Bank, they had employed that bank to make collections for them and their customers, at Washington and other places at the south, where the defendants had no agent ; that they placed the bills received by them of the plaintiffs in the hands of the Commonwealth Bank for collection — first indorsing them thus, " Pay to C. Hood, cashier," — which was the form of indorsement uniformly adopted by them, in such cases ; that the Commonwealth Bank then was, and to the time of its failure, January 11th, 1838, continued to be, in good credit; that the bills in question were duly transmitted by the Commonwealth Bank to its correspondent in Washington, the Bank of the Metropolis; that all the bills had been accepted but none of them had become due on the 11th of January, 1838, when the Commonwealth Bank

stopped payment; that on the 13th of January, the defendants took measures to demand the bills of the Bank of the Metropolis; that the latter refused to deliver the bills, but afterwards collected them, and claimed to hold the proceeds, on account of a balance due to them from the Commonwealth Bank; and that the defendants, thereupon, commenced a suit for the recovery of the proceeds of the said bills against the Bank of the Metropolis; which suit, at the time of the trial, was still pending, and the record of which is in the case, and may be referred to, subject to any legal objections thereto by the plaintiffs.*

It was also proved, on the part of the defendants, that, in 1833 or 1834, the several banks employed by the government of the United States, as deposit banks, entered upon a system of mutual dealings, for the purpose of facilitating exchanges and transfers of funds; that the Commonwealth Bank was one of these banks, and was frequently employed by other banks, in Boston and elsewhere, to collect money in places, (especially at the south and west, where the latter had no correspondents,) and that in all such cases, bills received for collection were indorsed in the manner above mentioned; and that, since that time, it had been the general practice of the banks in Boston, whenever any one of them received notes or drafts for collection, which were payable at a place where it had no correspondent, to pass over the same for collection to some other bank in Boston, which had a correspondent in such place, by a general indorsement, exactly like that made use of in indorsing the bills in question to the Commonwealth Bank.

There was no evidence, that any loss had ever happened, in consequence of the failure of a bank, in which bills or drafts had been thus deposited for collection; or that the owner of any such note or draft had in any instance sustained a loss, in consequence of a failure of the collecting bank. It was proved, that, although it was the general practice of the

---

* See 1 Howard, 234; 6 Ib. 212.

banks in Boston, to receive bills and notes for collection, which were payable in places, where they had no correspond- ents, yet that they sometimes refused to undertake the collec- tion of such paper.

The cashier of the plaintiffs testified, that in the course of business at their bank, within the last eight or ten years, they had discounted and received a large quanitity of southern and other drafts, though not to a great amount on Washing- ton, all of which were collected through the New England Bank; that, in three or four instances, within the period men- tioned, protested drafts had been returned to the plaintiffs by the New England Bank, from which it appeared, that that bank had indorsed bills and drafts, received by it for collec- tion, to other banks in Boston, in the same form in which the bills were indorsed to the Commonwealth Bank; and that the plaintiff had never found any fault with, or protested against, the employment by the defendants of other banks in Boston, though the witness could not say, with certainty, whether any such instances had occurred before the bills in question were placed in the hands of the defendants.

The cashier of the defendants produced and verified the protest of a draft sent by the plaintiffs to the defendants for collection, in Mobile, in May, 1836, and a copy of the de- fendants' letter, returning the same with a protest to the plaintiffs; which draft was indorsed by the plaintiffs,* and by the defendants, in the same manner with the bills now in question, to the cashier of the Merchants Bank in Boston, to which it was sent for collection.

On these facts, the case was withdrawn by consent from the jury, and submitted for consideration to the whole court, who are to order a nonsuit, default, or new trial, as, in their judgment, the case may require.

---

* In the argument for the defendants, and in the opinion of the court, it is stated, that the bills were indorsed by the plaintiffs to the defendants, in the same manner that they were indorsed by the defendants to the Common- wealth Bank; but the fact does not distinctly appear from the evidence con- tained in the statement of the case.

*R. Fletcher*, for the plaintiffs.    1.  The defendants, having themselves a mere delegated authority, could not delegate it to the Commonwealth Bank.    There is a distinction between the employment of servants or sub-agents, and a delegation of the entire authority of the defendants to another bank. Paley on Agency, 176 ; *Solly* v. *Rathbone*, 2 M. & Sel. 298 ; *Cockran* v. *Irlam*, Same, 301 ; *Catlin* v. *Bell*, 4 Camp. 183.    The plaintiffs had a particular confidence in the defendants, and it was a breach of trust on the part of the latter, to substitute any other bank in their place, without the plaintiffs' consent.

It is not denied, that, where the employment of a sub-agent is necessary, the agent is not responsible, provided he make a fit and proper selection.    If the defendants had sent directly to Washington, and there selected and employed a proper person, they would not have been responsible.    Where banks have been employed to collect notes and drafts, the cases have gone only to the extent of holding, that such paper may be sent to a suitable agent, but not to the length, that the bank employed may turn over its whole authority to some other bank.    *Allen* v. *Merchants Bank*, 15 Wend. 482 ; *Fabens* v. *Mercantile Bank*, 23 Pick. 330.

2.  The defendants have made themselves liable by their mode of indorsement, which, being general, passed the property in the bills to the Commonwealth Bank.    Such an indorsement was wholly unnecessary.    If the form had been, — " Pay to C. Hood, cashier, for the use of the Dorchester and Milton Bank," — the plaintiffs would not have lost their money.    It was on the ground of this general indorsement, that the defendants failed to recover against the Bank of the Metropolis.    See *New England Bank* v. *Bank of the Metropolis*, 1 Howard, 234, and the remarks of chief justice Taney, on pages 239, 240.    Restricted indorsements are familiar.    See Bayley on Bills (2d Am. ed.) 107 ; Story on Prom. Notes, §§ 143, 144 ; Story on Bills, §§ 211, 212. A restricted indorsement in the present case would have saved the property.    *Sigourney* v. *Lloyd*, 8 Barn. & Cr. 622 ·

*Lloyd* v. *Sigourney,* 5 Bing. 525; *Robertson* v. *Kensington,* 4 Taunt. 30; Bayley on Bills, 107, 108; *Wilson* v. *Holmes,* 5 Mass. 543; *Phipps* v. *Millbury Bank,* 8 Met. 79, 84; *Jackson* v. *Union Bank of Maryland,* 6 Harr. & J. 146; *East Haddam Bank* v. *Scovil,* 12 Conn. 303; *Mechanics Bank* v. *Earp,* 4 Rawle, 384; *Allen* v. *Merchants Bank,* 15 Wend. 482, and 22 Wend. 215.

In New York, a collecting bank is held responsible for its sub-agents, even to the extent of the neglect of a notary. *Allen* v. *Merchants Bank,* above cited. As to the liability of banks for the acts of sub-agents : See *Bank of Washington* v. *Triplett,* 1 Peters, 25; *Bellemire* v. *Bank of the U. S.* 4 Wharton, 105, 113; *Same case,* 1 Miles, 173; *Mech. B.* v. *Merch. B.* 6 Met. 13; *Van Wart* v. *Woolley,* 3 Barn. & Cres. 439; *Downer* v. *Madison Co. Bank,* 6 Hill, 648; *Thompson* v. *Bank of So. Car.* Riley, 81; *Taber* v. *Perrot,* 2 Gall. 565; *Canal B.* v. *Bank of Albany,* 1 Hill, 287.

3. The defendants justify their proceedings upon the ground of a supposed usage, that, where a bank employed to collect notes, drafts, bills, &c., has no correspondent at the place where the collection is to be made, it may turn over its employment to some other bank, which has such a correspondent. But this custom, as shown by the evidence, cannot affect the liability of the defendants.

In the first place, the usage being a recent one, knowledge of it is not to be presumed, and none is in fact proved. If a custom is so ancient as to be generally known, that is enough. 3 Wash. C. C. 150. But a single act, — which is all that is proved, — cannot make a custom; nor is it evidence of knowledge of the existence of a custom. *Duvall* v. *Farmers Bank,* 9 Gill & J. 31. The cases, in which the usage of a bank has been held to affect parties, all go upon the ground of a knowledge of the usage. See *Peirce* v. *Butler,* 14 Mass. 303; Bayley on Bills, 242, 243. In the case of *Whitwell* v. *Johnson,* 17 Mass. 449, which seems otherwise, the maker had knowledge of the usage, although the indorser, who was the party bound by it, had not. See also *Halls* v

*Howell,* 1 Harp. 426 ; Wood v. *Hickok,* 2 Wend. 501 ; *Stevens* v. *Reeves,* 9 Pick. 198.

Secondly, the usage is bad, because it is in violation of two well settled principles, already adverted to, namely, that an agent, though he may appoint a sub-agent, cannot delegate his entire authority ; and that an agent has no right to transfer the property in the things intrusted to him. The cases, in which the general principle is established, are numerous. *Strong* v. *Bliss,* 6 Met. 393 ; *Dykers* v. *Allen,* 7 Hill, 497 ; *Rapp* v. *Palmer,* 3 Watts, 178 ; *Leuckart* v. *Cooper,* 3 Scott, 521 ; *Homer* v. *Dorr,* 10 Mass. 26 ; *Eager* v. *Atlas Ins. Co.* 14 Pick. 141 ; *Waters* v. *Lilley,* 4 Pick. 145 ; *Perley* v. *Langley,* 7 N. H. 233 ; *Randall* v. *Rotch,* 12 Pick. 107 ; *Bolton* v. *Colder,* 1 Watts, 360, 363 ; *Newbold* v. *Wright,* 4 Rawle, 195 ; *Bryant* v. *Comm. Ins. Co.* 6 Pick. 131, 145 ; *Frith* v. *Barker,* 2 Johns. 327 ; *Edie* v. *E. I. Co.* 1 W. Black. (Wms. ed.) 295, & 2 Bur. 1216 ; *Thompson* v. *Giles,* 3 Dow. & R. 733 ; *Same case,* 2 Barn. & Cr. 422 ; *Muzzy* v. *Eagle Bank,* 9 Met. 306 ; *Perkins* v. *Franklin Bank,* 21 Pick. 483 ; *Merchants Bank* v. *Woodruff,* 6 Hill, 174 ; *Atkins* v. *Howe,* 18 Pick. 16.

In the third place, the usage does not go far enough ; it does not extend to the risk. There is no evidence of a usage, that the loss, if any occurs, shall not fall on the collecting bank, but on its employers. It is a common usage for trustees to deposit the money of their beneficiaries, mingled with their own, and in their own names ; but such deposits are at the risk of the depositors ; and, if the bank fails, the loss falls on them. *Massey* v. *Banner,* 1 Jac. & Walk. 241. The same rule applies to an agent. Paley on Agency, 46 ; *Wren* v. *Kirton,* 11 Ves. 377. And also to a receiver. *Massey* v. *Banner,* as above cited, and 4 Madd. 413. A usage, to carry freight on deck, does not go far enough to render insurers liable ; it must appear further, that the freight was at their risk, either under a special contract, or from the nature of the property, or from their being accustomed to pay such losses. *Taunton Copper Co.* v. *Merch.*

*Ins. Co.* 22 Pick. 108.   Customs are to be sparingly admitted.   *Donnell* v. *Col. Ins. Co.* 2 Sumn. 377.

*S. Bartlett*, for the defendants.   The inquiry is, whether the mode of transmission, adopted by the defendants, has rendered them liable, as for a neglect of duty.   Two questions arise, first, as to the agent employed ; and, second, as to the indorsement.

1. It is argued, that the employment of the Commonwealth Bank was improper, on the ground, that the trust reposed in the defendants was a personal confidence, and, also, that a delegated authority cannot be delegated.   Admitting the principles, upon which these objections are founded, they do not apply in the present case.   The contract was made with a corporation, which can only act by means of its agents ; and this necessarily implies a delegation of the whole authority.   As to the trust reposed in the defendants, it was nothing more than that they should select a proper agent to do the business in Washington.   The two grounds relied upon are founded in error so far as relates to collecting banks. *Mech. Bank* v. *Merch. Bank*, 6 Met. 13 ; *Fabens* v. *Mercantile Bank*, 23 Pick. 330 ; *Bank of Washington* v. *Triplett*, 1 Peters, 25.   A collecting bank is to use reasonable diligence, that is, to act judiciously and carefully, in the appointment of an agent, and to take reasonable care that the agent does his duty.   As there is no imputation of improper conduct, in either of these respects, the question is narrowed down to the simple inquiry, whether the defendants had a right to select as an agent a bank in Boston.   The burden is on the plaintiffs to show, that such a selection was improper ; and there is nothing in the evidence, from which such an inference can be drawn.

But, further, the conduct of the defendants was conformable to a general usage, which is shown to have existed since 1834 ; and this usage, the defendants were not only at liberty but were bound to pursue ; otherwise, they would take upon themselves the risk of conducting the plaintiffs' business in an unusual manner.   Story on Agency, §§ 77, 199.

It is objected, that a usage, which is repugnant to established principles, cannot be sustained ; but the very nature of a usage implies, to some extent, a qualification of the otherwise admitted principles of law. It is conceded, that a usage contrary to public policy cannot stand. The cases cited, in which a usage has been held bad, were probably all of them decided on the ground, that the usage set up was either repugnant to the contract of the parties, or against public policy ; but it cannot be found any where laid down, that a usage is bad merely because it is contrary to established principles. The usage in question is neither repugnant to the contract between the parties, nor against public policy. Its existence for three years was as effectual to its validity, as a longer period would have been. But, in fact, it had existed between these parties, as is shown by the evidence, for ten years. Besides, the plaintiffs had actual knowledge of the usage, and never found any fault with the course pursued by the defendants.

2. Were the defendants bound to make a restricted indorsement ? The plaintiffs indorsed to the defendants without restriction ; and the conduct of the former is a fair measure of the duty of the latter. This practice is not without a reason. It was proper, that these seven small drafts, which had been taken separately by the plaintiffs, in the course of their business, should be left upon a general indorsement, in order that they might be consolidated if necessary ; otherwise, the process of collection, if each little draft was obliged to be kept by itself, might be very expensive to the plaintiffs. That such is the necessity of the course of business is proved by the fact, that the plaintiffs themselves made a general indorsement to the defendants. But, if it were necessary to resort to it, there is evidence in the case, which shows that what took place between the parties was quite equivalent to a restricted indorsement. See the letters inserted in the report of the case of the *New England Bank* v. *Bank of the Metropolis*, 1 How. 234 ; the remarks of Marshall

16 *

C. J., in 1 Peters. 31 ; and *Lawrence* v. *Stonington Bank*, 6 Conn. 521.

WILDE, J.*    This is an action of assumpsit ; but the foundation of the plaintiffs' claim is the alleged negligence of the defendants, in not collecting certain bills left with them for collection by the plaintiffs.

The defendants proved that they placed these bills in the hands of the Commonwealth Bank for collection, the same being payable in the city of Washington, where the defendants had no correspondents.   This, the plaintiffs' counsel contend, the defendants had no right to do, on the ground, that an agent has no right to delegate his authority to a sub-agent, without the assent of his principal.   This, no doubt, is generally true ; but when, from the nature of the agency, a sub-agent or sub-agents must necessarily be employed, the assent of the principal is implied.   Such was the nature of the agency in the present case.   It could not have been expected, that the defendants would employ one of their own officers to proceed to Washington to obtain payment of the bills.   The bills undoubtedly were intended to be transmitted to Washington for collection, and if the defendants employed suitable sub-agents for that purpose, in good faith, they are not liable for the neglect or default of the sub-agents.   This was so decided in *Fabens* v. *Mercantile Bank*, 23 Pick. 330.   The chief justice, in delivering the opinion of the court, says, " It is well settled, that when a note is deposited with a bank for collection, which is payable at another place, the whole duty of the bank so receiving the note, in the first instance, is seasonably to transmit the same to a suitable bank or other agent at the place of payment. And as a part of the same doctrine, it is well settled, that if the acceptor of a bill or promisor of a note has his residence in another place, it shall be presumed to have been intended and understood between the depositor for collection and the bank, that it was to be transmitted to the place of the resi-

---

* The chief justice did not sit in this case.

denĉe of the promisor." This decision of the court on both points is, we think, well founded in principle, and supported by a decided weight of authority. The only opposing decision is in the case of *Allen* v. *Merchants Bank,* which was first reported in 15 Wend. 482, and which was afterwards removed to the court of errors, where the judgment of the court below was reversed by a majority of the court of errors. This reversal is opposed to a number of decisions of great authority, and is not, as we think, well founded in principle. If the bank in that case acted in good faith, in selecting a suitable sub-agent, where the bills were payable, there seems to be no principle of justice, or public policy, by which the bank should be made liable for the neglect or misfeasance of the sub-agent. And it is admitted, by Mr. Senator Verplanck, who states the grounds of the reversal of the judgment, that the bank would not have been liable, if there had been an understanding or agreement, express or implied, that the bills were to be transmitted to another bank for collection. Now, we think, in that case, as in this, there was manifestly such an understanding. There is another view of that case, taken by the learned senator, in which we cannot concur. He makes no distinction between the neglect of the officers of the bank where the bills were deposited, and that of the bank to which they were transmitted for collection. We think the distinction is obvious. We agree, however, with the learned senator, that the decisive question in such cases is, what was the understanding of the parties, as to the duties the collecting bank undertook to perform. And as to this, we have no doubt of the understanding of the parties in the present case. That was, we think, that the defendants were to transmit the bills, or to cause them to be transmitted, to some suitable bank or other agent in Washington, for collection ; and the questions are, whether, in employing the Commonwealth Bank to transmit the bills, the defendants acted in good faith ; and if so, whether they are responsible for the failure of that bank. That the defendants acted in good faith we cannot doubt. The Commonwealth Bank, at the time, was in perfectly good

credit, and had great facilities for obtaining payment of bills and notes payable in distant states. The defendants were the plaintiffs' general agents, and they had no instructions; they were, therefore, to exercise their best judgment as to the transmission of the bills, and the remittance of the money when collected. And we see no cause to doubt that they acted in good faith, and exercised a sound judgment. It was objected that the defendants ought to have made restricted indorsements; but it is a satisfactory answer, that the defendants made their indorsements in the same manner the plaintiffs did. Considering, then, that the defendants acted in good faith, and exercised a sound judgment in employing the Commonwealth Bank, we think there is no principle of law or equity which can subject them to any liability, by reason of the subsequent failure of that bank.

In our opinion, the defendants' responsibility was limited to good faith and due discretion in the choice of an agent to transmit the bills, and to procure a remittance of the money when paid. This case is not distinguishable from the case of *Fabens* v. *Mercantile Bank*, and the cases there cited.

We do not think that the proof of any usage is necessary to support these decisions; but in the present case, the usage is well proved to have been uniform, in similar cases, ever since the year 1833 or 1834, three or four years before these bills were deposited in the defendant bank.

It was also proved that one bill had been transmitted in like manner, by the defendants, for the plaintiffs, and returned to them with protest, and without objection by them. This was in 1836, more than a year before the bills in this case were deposited. This would be sufficient notice of the usage or manner in which the defendant transacted such business, if any such notice were required. It seems, however, that the usage of a bank is binding on all persons dealing with the bank, whether they know of the usage or not. *Lincoln and Kennebeck Bank* v. *Page*, 9 Mass. 155; *Bank of Washington* v. *Triplett*, 1 Pet. 25. That is a point, however, not necessary to be decided in this case.

*Plaintiffs nonsuit.*