CITIZENS' BANK OF PLEASANTVILLE, Appellee, v. FIRST NATIONAL BANK OF PLEASANTVILLE, Appellant.

**Banks and banking:** CHECKS: PRESENTATION FOR PAYMENT: NEGLIGENCE. It is the duty of the holder of a bank check to present it for payment within a reasonable time after its issue, having due regard for business usages and the circumstances of the case; but the mere fact that it is forwarded through the mails direct to the drawee instead of presenting it for payment through an agent, is not such negligence as will discharge an indorser, in the absence of a showing of prejudice.

**Same:** NOTICE OF DISHONOR. The holder of a bank check is entitled to an unqualified notice of its dishonor by the drawee before he is required, in order to hold an indorser, to notify him that payment has been refused.

**Checks:** PRESENTMENT: REASONABLE TIME. The question of whether a check was presented within a reasonable time is not always one of law even where the facts are undisputed; but if it were, a submission of the issue is error without prejudice, where as a matter of law the holder was not negligent in the presentation.

*Appeal from Marion District Court.*— HON. EDMUND NICHOLS, Judge.

MONDAY, OCTOBER 21, 1907.

THE opinion states the facts.— *Affirmed.*

*Hayes & Amos,* for appellant.

*Henderson & Henderson* and *Kinkead & Mentzer,* for appellee.

WEAVER, C. J.— The plaintiff and defendant are banks doing business at Pleasantville, Iowa. At Sandyville, about

seven miles distant from Pleasantville, is another banking concern known in the record as the Farmers' Bank. The only mail route between the two places is by indirect railway connection and star route aggregating more than 100 miles in length, involving two changes and requiring two days for the transmission of a letter. Sandyville is an inland town; the nearest railroad station being Ackworth, several miles distant. A daily mail, except Sunday, is sent from Ackworth to the postoffice at Sandyville. A rural carrier route also starts from Ackworth and includes Sandyville in its circuit. The Farmers' Bank was in the habit of receiving its mail from the rural carrier, having a box at or near its place of business for that purpose. Occasionally, mail directed to the bank would be received at the postoffice and was placed in the private box of one Gilbert, who was an officer of the bank. The pertinence of the facts here recited will become apparent in the further progress of this statement. The plaintiff is the older of the two banks at Pleasantville, and keeps an account and interchanges business with the Farmers' Bank at Sandyville. On the organization of the defendant bank it arranged with the plaintiff to receive such checks drawn on the Farmers' Bank as the defendant might from time to time take in. On Thursday, September 22, 1904, one Essex purchased a draft or bill of exchange from the defendant, giving in payment therefor his own check on the Farmers' Bank for $3,498.50, payable to the defendant's order. On Friday, September 23, 1904, defendant indorsed and delivered the check to plaintiff, receiving credit for the face amount thereof in settling their exchanges. Later, on the same day, plaintiff, according to its custom, forwarded the check by mail for payment direct to the Farmers' Bank.

On Saturday, September 24, there was a conversation over the telephone between plaintiff's cashier at Pleasantville and the cashier of the Farmers' Bank at Sandyville. In the course of this talk, plaintiff's cashier informed Heiney,

cashier of the Farmers' Bank, that the check had been sent by mail and asked if it would be paid. It is the claim of the defendant that the cashier of the Farmers' Bank answered the inquiry by an unqualified statement that payment would be refused. The clear weight of the evidence, however (and the jury evidently so found), is to the effect that Heiney answered that he would not pay the check unless he had sufficient funds to the credit of Essex when the check arrived, and that to this the plaintiff's cashier responded directing him to make due protest in case the check was dishonored when it reached the bank. There is also some controversy as to when the check did in fact arrive at Sandyville. The evidence tends to show, and the jury could properly find, that the letter inclosing the check did not arrive at Ackworth in time to be sent out to Sandyville on Saturday, and on Monday, September 26, it was sent on to the Sandyville postoffice, instead of being placed in the mail for delivery by the rural carrier. According to the postmaster at Sandyville, the letter arrived there on Monday evening, and was placed in Gilbert's box, from which it was taken and delivered to the bank on Tuesday morning, September 27. On the same day, and evidently very soon after receiving the check, payment was refused, and protest made. Notice of non-payment was given to the defendant on the same day, being sent by special messenger and deposited in the postoffice at Pleasantville. While it is perhaps not material to the disposition of the several questions raised upon this appeal, it will serve to explain the situation if we say that it appears to have been conceded that at the time Essex made the check in controversy he did not have a balance in the Farmers' Bank with which to pay the same, but on the same evening, after giving the check to the defendant, he drove across the country and delivered to the Farmers' Bank certain checks drawn by one Griswold on other banks at a distance, and deposited the same for collection, and thereby obtained an apparent credit to the amount of something

more than $4,000. Before the check in controversy had reached Sandyville, some of the checks thus deposited had already been dishonored, and it subsequently transpired that all of them were worthless. Plaintiff brings this action at law to recover from the defendant upon its indorsement, and defendant resists the demand on the ground that plaintiff was negligent in presenting the check for · payment and failed to give due notice of its dishonor.

Passing, for the present, any reference to the conversation between the plaintiff and the Farmers' Bank on Saturday, September 24, we will first consider whether any negligence is shown in plaintiff's presentation of the check for payment. Negligence cannot be predicated upon the mere circumstance that the check was forwarded by mail, instead of by messenger, even though the latter might have been the more expeditious course. The requirement of the law is that a check shall be presented for payment within a reasonable time after its issue, and, in determining what is reasonable, due regard is to be had to the usages of business and all the facts and circumstances of the particular case. Where a check is negotiated at a town distant from the drawee bank, it is practically the universal custom, indeed the only reasonably convenient method, to forward such checks by mail either direct to the drawee or to some third person or agent for presentation to such drawee. Indeed, we do not understand counsel to contend that plaintiff is chargeable with negligence in forwarding the check through the mails, but they insist with much earnestness that in forwarding it direct to the drawee itself, instead of having it presented through another bank or agent for collection, there was negligence which discharges the indorser. The point thus made cannot be sustained. Cases may be found in which it is held negligent on the part of the indorsee to send a check or bill direct to the drawee for payment or acceptance, and, where prejudice is shown, such negligence has

1. BANKS AND BANKING: checks: presentment for payment: negligence.

been considered sufficient to discharge the endorsee. *Plover Bank v. Moodie,* 135 Iowa, 685. There is here an utter absence of any showing that defendant suffered any loss by reason of the plaintiff's act in sending the check direct to the bank. If, instead of so doing, it had sent the check by mail to some agent at Sandyville for presentation and demand of payment, its dishonor would not have been ascertained a moment sooner, nor would such presentment have placed the defendant in any stronger or better position for recourse upon the drawer of the check than it now occupies. This branch of the defense is governed by the case last cited, and we need not further discuss it. That the mere fact of forwarding the check direct to the drawee is not in itself sufficient to discharge the indorser, see, also, *Carmichael v. Bank,* 4 How. (Miss.) 567 (35 Am. Dec. 408); *Indig v. Bank,* 80 N. Y. 100; *Kershaw v. Ladd,* 34 Or. 375 (56 Pac. 402, 44 L. R. A. 236); *Smith v. Miller,* 52 N. Y. 545.

Appellant further insists that the conversation which took place on Saturday, September 24, 1904, between Jordan, cashier of the plaintiff bank, and Heiney, cashier of the Farmers' Bank, to which reference has

**2. SAME:** notice of dishonor.

heretofore been made, amounted to due presentation and dishonor of the check, and that in order to charge the defendant as an indorsee notice should have been promptly given thereof. The general rule undoubtedly is that to constitute a valid demand the person making it must have the instrument with him to produce if called for. *Freeman v. Boynton,* 7 Mass. 483; *Whitwell v. Johnson,* 17 Mass. 449 (9 Am. Dec. 165); *Arnold v. Dresser,* 90 Mass. 435. It may be conceded, for the purposes of this case, that where the drawee does not demand an exhibition of the instrument, and unconditionally announces that he will not pay it the actual production thereof will be held to have been waived and notice of dishonor may be given at once. But this concession is not decisive of the sufficiency of the defense in the present instance. In sub-

mitting this issue, the trial court instructed the jury as follows:

If you find that the check in suit was remitted for payment by the plaintiff direct to the Farmers' Bank, the drawee, at Sandyville, and that thereafter prior to its actual receipt through the mails by the drawee, and at a time when said check should in the ordinary course of mail have been received by the drawee, the said Farmers' Bank, with full knowledge of the date and amount of said check, the name of its maker and drawee, and that the same had been forwarded to it for payment, then positively and unconditionally refused payment of said check, and so notified the plaintiff, then no further presentment for payment to the said drawee was necessary, and it then became the duty of the plaintiff to give notice to the defendant of the dishonor of said check for nonpayment within the time and as explained in these instructions. Failure of the plaintiff to so notify the defendant would discharge it from liability on its indorsement. If, however, you find that the refusal, if any, to pay said check prior to its actual receipt through the mails was conditional upon the said Essex having funds to his credit with the drawee bank upon receipt of said check sufficient to pay the same, then plaintiff need not have given notice of dishonor until after said check was actually received and payment refused.

The rule thus stated was in our view sufficiently favorable to the defendant, and under it the jury appear to have found that there was in fact no demand or refusal of payment in the conversation to which we have referred. Indeed, under the testimony, no other finding could be upheld. The substance of the interview, fairly interpreted, amounted to this: Plaintiff's cashier informed the cashier at Sandyville that the check was then en route by mail, and inquired whether it would be honored on its arrival. He was informed that if, on its presentation, Essex had sufficient balance to his credit, payment would be made; otherwise it would be refused. Under these circumstances, we think there was nothing for the plaintiff to do except to wait for

the arrival of the check at its destination, for until then it could not be known whether payment would or would not be refused.

It is further argued that the trial court erred in submitting to the jury the question whether presentation for payment was made within a reasonable time after the issuing of the check. If we were to concede that the question under the circumstances of the case is one of law, the error in its submission is not one of which defendant can complain, because, as we view the record, a finding that plaintiff was negligent in this regard could not be upheld. The check was forwarded on the very day it was received and by the usual and ordinary medium employed for such purposes. The fact that it was delayed over Sunday in transmission would not be such a delay as to require plaintiff to give defendant any notice thereof. Nor is the fact that the letter inclosing the check remained in the postoffice from Monday afternoon until Tuesday morning before delivery of any significance, for had it been delivered on Monday protest made on the following day, when it was in fact made, would have been in due time under the well-established rule of law governing such transactions. Code Supp. 1902, section 3060a103. Nor is it universally true that, even where the facts shown in evidence are without dispute, the question whether the presentment was in reasonable time is for the court. *Hart v. Eastman,* 7 Minn. 74 (Gil. 50); *Eccles v. Ballard,* 2 McCord, Law (S. C.) 388; *Brown v. Johnson,* 12 N. C. 293; *Bank v. Gaffney,* 9 Ala. 153.

*3. CHECKS: presentment: reasonable time.*

Other exceptions argued by counsel are governed by the conclusions we have already announced and need not be further considered.

There is no reversible error in the record, and the judgment of the trial court is *affirmed.*