[No. 18317. Department Two. February 19, 1925.]

SPOKANE VALLEY STATE BANK, *Respondent*, v. E. B.
LUTES *et al., Appellants*, GEORGE T. BLACK,
*et al., Defendants.*[1]

BANKS AND BANKING (31, 32)—COLLECTIONS—NEGLIGENCE—EVI-
DENCE—CUSTOM OF BANKS. It is not negligence to send a bill or
check for collection to the bank that issued it, especially where it
was the stronger of two banks at the place, and it was the custom
to send it to the stronger bank.

CUSTOMS AND USAGES (1)—CUSTOMS OF BANK—KNOWLEDGE. The
general usage and custom of banks in making collections is binding
upon persons dealing with the bank, in the absence of instructions
to the contrary.

BANKS AND BANKING (33)—COLLECTIONS—RIGHT TO PROCEEDS—
NEGLIGENCE—METHOD OF PAYMENT—CUSTOM OF BANKS. It is not
negligence for a bank to receive a draft from a collecting bank in
exchange for a certificate of deposit, instead of requiring the cash
to be actually shipped, where the custom of banks in the locality
was to do so.

SAME (33)—COLLECTIONS—PAYMENT BY DRAFT—RIGHT TO PROCEEDS
—CUSTOMS OF BANKS. Where it was the custom of banks to receive
a draft and give credit, and charge the same back to the customer
in case the draft was not paid, the draft does not operate as ab-
solute payment of the account.

SAME (33)—COLLECTIONS—CUSTOMS OF BANKS—EVIDENCE — AD-
MISSIBILITY. Upon an issue as to the negligence of a bank in hand-
ling a transaction, it is admissible to show that it acted within the
general custom of banks in that locality, the evidence not being
directed to a particular rule or custom of that bank.

ESCROWS (5)—BREACH OF CONDITIONS—WAIVER—RETENTION OF
BENEFITS. Breach of an escrow agreement to the damage of parties
who went into possession is not shown by a mistaken payment which
they received and retained the benefit of.

Appeal from a judgment of the superior court for
Spokane county, Lindsley, J., entered April 5, 1923, in
favor of the plaintiff, in an action for money paid,
tried to the court. Affirmed.

[1]Reported in 233 Pac. 308.

*D. R. Glasgow* and *McWilliams & Orr,* for appellants.

*James P. Dillard* and *Graves, Kizer & Graves,* for respondent.

Main, J.—By this action the plaintiff seeks to recover from the defendants E. B. Lutes and wife approximately the sum of $3,400, with interest. The trial before the court without a jury resulted in a judgment sustaining a recovery in the amount claimed. From this judgment, the defendants Lutes and wife appeal.

The facts are not in dispute and may be summarized as follows: The appellants owned a certificate of deposit issued by the Citizens Bank of Laurel, Montana, for the sum of $3,296, with accrued interest, matured on the 15th day of December, 1922. On October 2, 1922, they purchased from George T. Black and wife a tract of land for which they agreed to pay $3,500. The certificate of deposit was to be used in the payment. To accomplish this, the deed and the certificate were, under an escrow agreement, placed with the respondent as escrow holder, with direction to collect the certificate when it became due. The respondent sent the certificate to the Exchange National Bank at Spokane, its correspondent. This bank, a few days before the certificate became due, sent it to the Citizens National Bank of Laurel, the issuing bank. It arrived there on December 15th, the day it matured, and the Laurel bank immediately took up the certificate of deposit and issued its draft for the same, drawn in favor of the Exchange National Bank of Spokane and upon the Montana National Bank of Billings, Montana. This draft was sent to the Exchange National Bank, and that bank in turn delivered the draft to the Spokane branch of the Federal Reserve Bank for collection. The draft was then sent to the branch of the Federal Reserve Bank

at Helena, Montana, which bank forwarded it to the Billings bank upon which it was drawn. On the day it arrived at the Billings bank, the National Bank of Laurel, which had issued the draft, closed its doors and payment of the draft was refused. When the Exchange National Bank of Spokane received the draft, it notified the respondent that there was placed to its credit the amount thereof. Some days later the respondent paid over that amount to Black and wife and delivered the deed which it held in escrow to the appellants. Shortly after this, the Exchange National Bank received notice from the Billings bank that the payment of the draft had been refused. The Exchange National Bank then charged the account of the respondent with the amount of the draft. The respondent notified the appellants of what had occurred and demanded reimbursement, which was finally refused. The present action was then begun.

The first question to be determined is whether the Exchange National Bank of Spokane was negligent in sending the certificate of deposit direct to the Citizens National Bank of Laurel, the bank which had issued it. Upon this question the authorities are not in harmony, but the weight of authority, as well as the more modern cases, support the rule that it is not negligence to send a certificate of deposit, bill of exchange or check to the bank which is to pay it, when that bank is the only bank in the city or town in which it is located, and that if the instrument is sent directly to the bank which issued or is to pay it, no liability arises by reason of this fact, in the absence of a showing that it worked a loss. *Hilsinger v. Trickett*, 86 Ohio St. 286, 99 N. E. 305; *Farmers Bank & Trust Co. v. Newland,* 97 Ky. 464, 31 S. W. 38; *Kershaw v. Ladd,* 34 Ore. 375, 56 Pac. 402; *Wilson v. Carlinville National Bank,* 187 Ill. 222, 58 N. E. 250; *Citizens Bank of Pleasantville v.*

*First National Bank of Pleasantville,* 135 Iowa 605, 113 N. W. 481; *Waggoner Bank & Trust Co. v. Gamer Co.,* 113 Tex. 5, 213 S. W. 927; *Indig v. National City Bank,* 80 N. Y. 100.

In the present case it is not shown that any loss occurred to the appellants by reason of the certificate of deposit being sent directly to the bank that issued it. It arrived at that bank on the day it was due, and immediately the draft was issued and sent to the Exchange National Bank at Spokane. In addition to this, there was evidence that it was the custom of banks to send a certificate of deposit, draft or check direct to the bank which was to pay it, even though there was another bank in the city or town where that bank was located, providing it appeared to be the strongest bank. There was evidence that the officer of the Exchange National Bank who handled the matter had looked up the standing of the two banks at Laurel, one of which was a state bank, and concluded that the issuing bank was the stronger bank of the two, and so sent the draft direct to it.

There appears to be some contention that it was negligence for the Exchange National Bank to send the draft for collection through the Federal Reserve Bank rather than sending it direct to Billings. The evidence shows that this was in accordance with the custom of banks. If the custom was a general one, as the evidence shows, and was reasonable, the appellants were bound by it, even though it was not actually known to them at the time they placed the certificate of deposit with the respondent for collection, according to the weight of authority, though there are cases holding the other way. The prevailing rule appears to be that the general usage and customs of banks in making collections will bind persons dealing with them in this business, whether such usage or custom be known or not,

this upon the theory that when a person hands over a negotiable instrument to a bank for collection, without remark as to the course to be pursued, the bank is not bound to thrust upon him a statement of its intended course. Either he knows and approves of the ordinary and customary way that collections are handled by banks, or he voluntarily trusts to the wisdom of the bank in handling the matter. He impliedly consents to its collection in the usual and ordinary way. *Jefferson County Savings Bank v. Commercial National Bank,* 98 Tenn. 337, 39 S. W. 338; *Landa v. Traders' Bank of Kansas City,* 118 Mo. App. 356, 94 S. W. 770; *Dorchester and Milton Bank v. New England Bank,* 55 Mass. 177; *British & American Mortgage Co. v. Tibbals,* 63 Iowa 468, 19 N. W. 319; *San Francisco National Bank v. American National Bank of Los Angeles,* 5 Cal. App. 408, 90 Pac. 558; *Hilsinger v. Trickett, supra.*

In the case last cited it is said:

"It is the rule of reason, sustained by sufficient authority, that the party is charged with knowledge of the general custom of banks in the matter of collection of commercial paper, and must be assumed, in the absence of other instructions, to have intended that the bank will perform the duty imposed upon it in the usual and customary way."

There was no negligence, therefore, on the part of the Exchange National Bank in sending the certificate of deposit direct to the issuing bank at Laurel, Montana, or in sending the draft for collection through the Spokane branch of the Federal Reserve Bank.

The next question is whether it was negligence for the Exchange National Bank to receive the draft in exchange for the certificate of deposit instead of requiring the cash to be actually shipped. In considering this question it will be assumed, but not decided, that

the Exchange National Bank acted as the agent of the respondent and not of the appellants. Upon that question the authorities are in irreconcilable conflict, and we will leave its determination for future consideration when it may necessarily be involved in the decision of a particular case. The evidence shows that it is the custom of banks to make remittances by draft and not by the shipment of cash. It may be, and there are some authorities to this effect, that the court could take judicial notice that this was the custom and practice of banks in making remittances, but it is not necessary in this case to go that far, as the evidence establishes the custom. The appellants, upon this question, place special reliance upon the case of *Federal Reserve Bank of Richmond v. Malloy,* 264 U. S. 160. In that case the proof of custom there showed that remittances were made " 'by means of its (the drawee bank's) exchange draft or by a shipment of currency'." The distinction between that case and this is in the proof as to the custom that prevailed in the respective localities from which the cases arose. The Exchange National Bank, therefore, was not guilty of negligence in failing to require the shipment of currency or gold instead of the draft.

The next question is whether the draft operated as payment absolute or conditional. Upon this question the evidence again shows the custom of banks upon receiving drafts to give credit, and then, should the draft not be paid, to charge the item back to the customer. In *Bellevue Bank v. Security National Bank,* 168 Iowa 707, 150 N. W. 1076, quoting from *Griffin v. Erskine,* 131 Iowa 444, 109 N. W. 13, it is said:

" 'Checks, drafts, and other bills of exchange are the means of transferring the money, in adjusting nearly all commercial transactions, and in authorizing an agent, whether bank or individual, to make collections,

it may be assumed, in the absence of instructions to the contrary, that the authority is to be executed in the manner usual and customary in the commercial world. While the agent may not accept anything but the actual cash in satisfaction of the claim, he may receive a check or draft, negotiable and payable on demand, which he has good reason to believe will be honored on presentation, as a ready and more convenient means of obtaining the money in conditional satisfaction of the debt. Such a payment offers no greater temptation to the agent than payment in cash to which ordinarily it is equivalent. If honored by the drawee, payment relates back to the time of delivery.' ''

To the same effect are the following: *First National Bank of Memphis v. First National Bank of Clarendon,* 63 Tex. Civ. App. 469, 134 S. W. 831; *Jefferson County Sav. Bank v. Commercial National Bank, supra; Hilsinger v. Trickett, supra; Albert v. State Bank,* 78 Misc. Rep. 56, 138 N. Y. Supp. 237.

The appellants further argue that their objection to the evidence relative to the custom should have been sustained, and cite in support of this position, among other authorities, the case from this court of *American Sav. Bank & Trust Co. v. Dennis,* 90 Wash. 547, 156 Pac. 559. In that case the bank sought to show its custom or rule in dealing with other customers in such cases as was there presented, and it was held that this rule or custom was not binding upon the defendant when he was not aware of any such custom or rule. The difference between that case and this is that there it was a particular rule or custom of the bank, while here the evidence went, not to a particular custom of a particular bank, but to the general custom, and was properly admissible. In addition to this, the evidence in the present case as to custom was not offered for the purpose of modifying the terms or the effect of a contract, but was offered upon the question of whether

the Exchange National Bank was guilty of negligence in the manner in which it handled the transaction.

Finally, it is contended that the respondent, in paying out the funds to Black and wife before the draft had actually been paid, had violated the escrow agreement, but even if this were true it would not change the result. The appellants purchased the real property from Black and wife at a stipulated price, making a cash payment and agreeing that the money realized from the certificate should be used to pay the balance of the purchase price. The appellants went into possession of the property. They did not plead breach of the escrow and offered no proof of damages which they claimed to have suffered for that reason. Acting under the mistaken belief that the certificate had been paid, the respondent made payment to Black and wife. The appellants received and retained the benefit of that payment in that they have title to and possession of the property.

The judgment will be affirmed.

BRIDGES, MITCHELL, and FULLERTON, JJ., concur.