JOHN SIGERSON, PLAINTIFF IN ERROR, *v.* EDWARD MATHEWS.

Where the endorser of a promissory note, in conversation with the agent of the holder, before its maturity, dispensed with a presentation of the note and demand of payment, and promised to pay it, or provide for its payment, at maturity, he could not, when sued, set up as a defence that the note was not presented for payment, and demand made therefor when it was due, and that no notice of its dishonor was given.

If, after the maturity of the note, the endorser promised the agent of the holder to pay the same, having, at the time of making such promise, knowledge of the fact that the note had not been presented for payment, and no demand made therefor, or notice of non-payment, he could not, when sued, set up as a defence a want of such demand or notice.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the district of Missouri.

The facts are stated in the opinion of the court.

It was argued by *Mr. Cushing* and *Mr. Gillet* for the plaintiff in error, and by *Mr. Blair* for the defendant.

The points made by the counsel for the plaintiff in error were the following:

*First.* The note in question was not an accommodation note, made for the defendant.

The evidence shows that there could be no pretence that the note in question was made for the accommodation of the defendant; but that it was, in fact, a regular business note, taken by defendant on the sale of real estate, without security. And that when, at a subsequent day, the property was re-deeded, and the remainder of the notes given up, the defendant credited this particular note on another debt (account) due him from James Sigerson, the maker. When it was given, and when it was transferred, the defendant must have confidently expected that it would be paid by the maker. When he took back the property, and credited the note to the maker, he clearly relied upon its being paid by the maker, or he would not have given him credit for it until he had actually taken it up, or he have been discharged from it as endorser.

*Second.* Unless the defendant agreed, unconditionally, after the note became due, and after he knew that the note had not been presented for payment, to pay said note, he was not liable therefor.

The note not having been made for the defendant's accommodation, he could only be made liable by presentation at the bank, demand of payment, and notice of non-payment. His liability depended upon the holder taking the steps required by law to charge him. If they had been taken, his liability became fixed by them, but otherwise not. If he supposed they had not been taken, and that he had been made liable, and acted under a mistake in relation to the facts, he would not be bound by such action when the real facts are developed. If he made any promise, on misapprehension of the facts, he is not bound by it, because the inducement to make it was unreal, and was not what it appeared to be. A promise under such circumstances has nothing to stand upon. There is no evidence that the note had been presented to the bank, or that any steps whatever had been taken to charge the endorser; nor does it appear that the defendant had been informed of the true state of the facts in relation thereto at the time of the conversation, which is now claimed to be a promise of payment.

In Thornton *v.* Wynn, 12 Wheat., 183, it was held that where the promise or agreement was not unequivocal, it would not authorize a recovery.

*Third.* An agreement to pay the debt of a third person by an endorser, where the note was not presented at the time and place of payment, and notice of non-payment duly given, unless made and signed by the party to be charged, upon a consideration specified therein, is not binding, and cannot be enforced.

*Fourth.* The suggestion by the defendant to the plaintiff's agent, that he need not prove the note against the estate of James Sigerson, and that it would be paid at maturity, created no liability on the part of the defendant.

The liability of the defendant did not depend upon the probating of the note, nor did the remark that it would be paid at maturity amount to a promise to pay. It implied that there would be funds ready to take it up at the time and place of payment, and nothing more. The inference was, that the means would be supplied by those whose duty it would be to provide for the payment.

Nor did the suggestion to Elder tend to show that a presentation, demand of payment, and notice of non-payment, were dispensed with. The remark that the note would be paid at maturity seems to imply that the defendant expected the note

would be paid at maturity, on being presented in the usual course of business. It clearly implied that it was expected, when it matured, it would be presented somewhere to be paid; and as no place or person was named, the time and place named in the note must have been intended. It follows, that there was no waiver by the defendant of the condition of presentation, demand, and notice of non-payment, prior to its falling due.

The defendant did not occasion the omission of that necessary duty in order to create a liability on his part. Nothing was said on that subject. The plaintiff's agent was left to take such steps as his principal directed, or that he deemed expedient, and the plaintiff must abide the consequences.

*Fifth.* The court erred in instructing the jury upon questions not raised by the evidence.

*Mr. Blair* said:

The principle declared by the court amounts only to this, as has been said in a similar case, (that of the Taunton Bank *v.* Richardson, 5 Pickering, 436,) that a party may dispense with conditions for his benefit; and it has been applied in many cases similar to this. (See Dinkwater *v.* Tibbatts, 5 Shepley, p. 16; Boyd *v.* Cleveland, 4 Pickering; Marshall *v.* Mitchell, 35 Maine, 221; Thornton *v.* Wynn, 12 Wheat., 183; and the Union Bank of Georgetown *v.* Magruder, 7 Pet., 287. See also Story on Bills, 389, 390, 499 to 507; Jones *v.* Foles, 4 Mass., 245, 253; Farmers' Bank *v.* Waples, 4 Harring., 429; Hoadley *v.* Bliss, 9 Geo., 393; Lary *v.* Young, 8 Eng., 402; 5 Pickering, 436; 8 ib.; 1 Har. and J., 531; 2 N. H., 340; 1 Hill S. C., 411; 3 Met., 434.)

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the Circuit Court for the district of Missouri.

An action was brought by Mathews against John Sigerson, as endorser on a note of James Sigerson, now deceased, dated the 10th of March, 1852, for the payment of the sum of two thousand dollars, two years after date, at the Bank of the State of Missouri, with interest from the date.

It was proved on the trial that, in 1851, Mathews advanced largely to John Sigerson on some transactions in pork, whereby Sigerson became indebted to him in the sum of two thousand dollars; that Sigerson wanted two years' time, on which Mathews required a mortgage on real estate as security; but Sigerson offered to give the note of his brother James, endorsed by himself, instead of the mortgage; and he repre-

sented that his brother James was the owner of a valuable real estate near St. Louis; which offer was accepted, and the note was given.

Some time in the fall of 1852, Joseph E. Elder, a witness, received the note from Mathews for collection, soon after the death of James Sigerson, and before the note became due. Witness called on John Sigerson, and asked him if he should have the note protested against the estate of James Sigerson. He replied, that the witness need not do so, and that the note should be paid at maturity. The witness then placed the note in his portfolio, where it remained until after due. After it was due, witness called on John Sigerson, and informed him that he had neglected to put the note in bank for collection, and asked him what he was going to do; he said he would see witness in a few days, and arrange it. Afterwards Sigerson said to the witness that he did not consider himself liable as endorser, as the note had not been protested.

In February, 1852, John Sigerson sold his interest in the farm near St. Louis, which was one-half of it, and which contained about one thousand acres, to James Sigerson, who was to pay off the encumbrances on the land, which amounted to about sixteen thousand dollars. James executed twenty notes for two thousand dollars each, payable in six, twelve, and eighteen months; and John Sigerson made him a deed. In July, 1852, James reconveyed the land to John, and the bargain was rescinded. This was done because James had not fulfilled his contract. Nineteen of the notes were given up, but the note now in suit was not surrendered, and for which the account of James was credited on the books of John. James, on his decease, left no property.

On the above facts, the court charged the jury, "if they believe, from the evidence, that, before the maturity of the note, in conversation with the agent of the plaintiff, the defendant dispensed with a presentation of the note and demand of payment, and promised to pay it or provide for its payment at maturity, he cannot now set up as a defence to this suit, that the note was not presented for payment, and demand made therefor, when it was due, and that no notice of its dishonor was given."

That, "if, after the maturity of the note, the defendant promised the plaintiff or his agent to pay the same, having at the time of making said promise knowledge of the fact that the note had not been presented for payment, and that no demand had been made therefor, or notice of non-payment given, the defendant cannot now set up, as a defence to said note, a want of such demand or notice."

"If the defendant dispensed neither with the presentation of the note and notice, nor promised to pay the same, having knowledge as above stated, the plaintiff cannot recover."

Exception was taken to these instructions.

Certain instructions were asked by the defendant, which were refused; but it is unnecessary to state them, as they are substantially embraced in those given by the court.

As there was no formal demand of payment, nor protest for non-payment and notice, those requisites must have been waived by the defendant, to make him responsible as endorser; and to this effect were the instructions of the court; and we think the testimony not only authorized the instructions given, but also the verdict rendered by the jury. Before the note was due, the defendant said to Elder, the agent of Mathews, and who held the note, that he need not take steps to collect it from the estate of his brother James, as it should be paid at maturity. This was an assurance which could not be mistaken, and it was relied on by the agent. He placed the note in his portfolio, where it remained until after it became due. After this, the agent called on the defendant, and informed him that he had neglected to take measures for the collection of the note, and asked him what he was going to do; he answered, that in a few days he would see the witness, and arrange it. This was an unconditional promise to pay the note, which no one could misunderstand, and which he could not repudiate at any subsequent period.

A promise by an endorser to pay a note or bill, dispenses with the necessity of proving a demand on the maker or drawer, or notice to himself. (Pierson *v.* Hooker, 3 Johns., 68; Hopkins *v.* Liswell, 12 Mass. Rep., 52.) Where the drawer of a protested bill, on being applied to for payment on behalf of the holder, acknowledged the debt to be due, and promised to pay it, saying nothing about notice, it was held, that the holder was not bound to prove notice on the trial. (Walker *v.* Laverty, 6 Manf., 487.) An unconditional promise by the endorser of a bill to pay it, or an acknowledgment of his liability, and knowledge of his discharge by the laches of the holder, will amount to an implied waiver of due notice of a demand of the drawee, acceptor, or maker. (Thornton *v.* Wynn, 12 Wheat., 183; Bank of Georgetown *v.* Magruder, 7 Pet., 287.) We think the instructions of the court were correct, and that, consequently, the judgment must be affirmed, with costs.