GEORGE M. COLBATH *vs.* H. B. STEBBINS LUMBER COMPANY.

Aroostook.      Opinion January 1, 1929.

*Pattangall, Locke & Perkins,*
*R. K. Wood,*
*W. S. Brown,* for plaintiff.
*Cook, Hutchinson & Pierce,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, MORRILL, STURGIS, BASSETT, JJ.

BASSETT, J.    Action on the case to recover under a written contract for an alleged excess of spruce and fir logs above an amount

**408**

stated in the contract. Plea, general issue with brief statement that there was in fact no excess and that any excess was not proved within the time provided by the contract. Verdict of $5,317.98 for plaintiff. Case comes up on exceptions and general motion.

The plaintiff and defendant, by its treasurer, H. B. Stebbins, entered into a written contract dated August 30, 1920, by which the plaintiff agreed to construct a rossing mill at Squa Pan Lake, and cut during the ensuing logging season, and sell and deliver, the last delivery to be shipped by December 1, 1921, to the defendant 8,000 cords of rossed pulp wood and the defendant agreed to buy the pulp wood at specified prices.

The plaintiff by May 14, 1921, had cut and put into the lake all the logs to be used under the contract and had delivered some of the pulp wood to the defendant.

The defendant, conditions having changed, did not want to complete the contract. It was rescinded, the defendant agreeing to credit the plaintiff on his open account with an agreed sum for the logs in the lake, and the parties making a new written agreement which was made up of two parts, both dated and executed on May 14.

By one of these parts, drawn first, the plaintiff agreed to complete his sawmill on the lake and have it ready within thirty days to manufacture the logs then in the lake, the approximate amounts of which were stated, and to manufacture and ship the logs according to orders furnished by the defendant and to pay the defendant a commission of five per cent on the selling price, the proceeds to be applied first upon a mortgage given that day by the plaintiff to the defendant upon the logs to secure in part an advance payment of the balance due on stumpage of the logs, and of an amount not exceeding forty thousand dollars, to be advanced by the defendant to complete the mill. The plaintiff agreed to manufacture and ship on orders of the defendant a sufficient quantity of lumber to pay the mortgage on or before December 31, 1921.

The defendant agreed to advance not exceeding forty thousand dollars to complete the mill and put it into condition to manufacture the lumber and to pay the balance due on stumpage and when the mortgage had been paid, then to pay plaintiff the amount, less commission, of shipments made thereafter within sixty days of the date of shipment.

On May 14 the plaintiff and defendant met and drew a second part, which is the center of the controversy, as follows:

"In connection with our agreement of May 14th, 1921 and of cancellation of our agreement of August 30, 1920, H. B. Stebbins Lumber Company agrees to turn over to G. M. Colbath money required for labor bills in the manufacturing of logs under our agreement of May 14th, 1921, not to exceed $6.00 a thousand on lumber as it is shipped under that contract. If by December 31, 1921 it proves that G. M. Colbath now has cut and in Squa Pan Lake to apply on our contract of May 14th, 1921, Spruce and Fir logs in excess of 4,590,666, we will pay you an amount equal to $10.00 a thousand on such excess of Spruce and Fir logs, but not to exceed $8,355.00. If it should prove by December 31, 1921 that the amount of Spruce and Fir logs now cut and in Squa Pan Lake to apply under our contract of May 14, 1921 is less than 4,590,666, G. M. Colbath agrees to pay H. B. Stebbins Lumber Company an amount equal to $10.00 a thousand on such shortage."

The mill was completed about July 1 and the manufacture into lumber of the logs in the lake began and continued until about November 10 when the lake froze over and manufacturing was suspended until the following spring. During 1921 about half of the logs had been manufactured. During the winter of 1921-1922 the plaintiff landed on the ice of the lake another cut of logs, which were boomed. The logs in question were loose. The plaintiff from time to time shipped lumber manufactured from the logs in question upon orders of the defendant and the defendant received the stipulated commission. By August 23, 1922, all the logs were manufactured except 521 which became mixed with the new cut. On September 15, 1922, the plaintiff sent to the defendant the mill scale amount of the manufactured lumber which showed an excess above the 4,590,666 stated in the second part of the contract. The defendant refused to pay (1) because the scale included some lumber graded as "red rot," (2) because the lumber had been sawed scant at the mill, thereby making the mill scale appear more than actually sawed, so that with scale bill corrected by rejection of red rot and reduction for scant sawing there was a shortage, not an excess, and

(3) because the amount of any excess had not been determined by December 31, 1921.

The first exception raises the question, whether, in determining the "excess" or "shortage" under the second part of the contract, lumber graded as "red rot," of which there was admittedly 433,204 feet board measure, should be excluded. In view of other instructions deemed to be erroneous and prejudicial, bearing on the plaintiff's right now to maintain his claim for an alleged excess, we think it is unnecessary to consider further this exception other than to say the question was properly left to the jury and the exception cannot be maintained.

The second exception raises the question of the effect of the date, December 31, 1921, in the second part of the contract, the defendant contending that it was of the essence of the contract.

The parties on May 14 in executing the second part of the contract had in mind a liquidation of the damages to the plaintiff for not carrying out the rescinded contract. They had agreed upon a sum, which was credited to the plaintiff based upon an agreed amount of logs in the lake, which amount the plaintiff believed to be less than the actual amount and the defendant believed to be more than, or at least not less than, the actual amount.

The completion of the first part of the contract was in no way dependent upon any difference between the actual and the fixed amount of logs in the lake as agreed upon in the second part of the contract. In fact the two contracts are in no way dependent on each other. By the second part, the defendant promised that, if by December 31 it was proved there were in the lake on May 14 more than the stated amount of logs, he would pay the plaintiff a computed amount of money, and the plaintiff making a mutual and similar promise in case of shortage. Proving or determining by December 31 was not an impossible condition, nor at the date of the contract did it appear to be so. If to prove it would require taking the logs from the lake and piling them, "banking them" before and manufacturing them after the lake froze or running the plant more hours in the twenty-four, that would not, though causing additional expense, be an excuse for non-fulfillment of the condition.

The defendant requested an instruction "that the alleged overrun not having been proved before December 31, 1921, the plaintiff cannot recover."

This was refused and the jury were instructed, "Now I charge you . . . that in this contract that date, December 31, 1921, is not of the essence of the contract to such an extent as to make an absolute and precise and complete compliance with the matter of the scale at the tail of the mill to be such as to deprive Colbath of any rights on the ten dollars phase of the contract after that date — on stuff sawed after that date. . . . If the evidence now in the case, spoken and written, has satisfied you that on that day in 1921 when their minds met in the contract they both knew and appreciated that the defendant's liability was to end on December 31, 1921, you may find that that date was of the essence of the contract and govern your further deliberations accordingly. Generally the date does not bind. If they both knew and appreciated the fact and agreed to it in May, it certainly does bind."

The defendant excepted to the refusal to instruct and to the instructions given, because (1) under the contract time was of the essence of the contract, (2) because that question should not have been left to the jury, and (3) because of the words in the charge, "generally the date does not bind."

In general, it may be said that at law time is always of the essence of the contract, *Snowman* v. *Harford*, 55 Me., 197, 199; *Hill* v. *Fisher*, 34 Me., 144; *Williston on Contracts* (1921) II, Sec. 845; 6 R. C. L., Sec. 285 at page 898; 13 C. J., 686; *Jennings* v. *Bowman*, 91 S. E., 732 (So. Car.), although in equity a different rule prevails. Time in equity is held to be of the essence or not, according to the circumstances of the case. *Snowman* v. *Harford*, supra; *Williston on Contracts II*, Sec. 852; 13 C. J., 686; *Telegraphone Corp.* v. *Telegraphone Co.*, 103 Me., 454. And under some circumstances, in law time may or not be of the essence according to the intent of the parties.

But when it is said that time is of the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract is essential in order to enable him to require performance from the other party. One party may make his promise expressly conditional on the exact performance of any agreed condition, and, therefore, performance on a specified day

or hour, or before a specified day, may be made such a condition. *Williston on Contracts II*, Sec. 846.

We think that in the instant case the parties made mutual promises expressly conditional upon the performance of an agreed condition and the case falls within the well-established rule that where parties expressly agree that liability shall depend upon the happening of a future event, the plaintiff must show that the event upon which the money is to be paid has happened or that the defendant has improperly prevented its happening or has waived it. *Holdripp Exec.* v. *Otway*, 2 Saunders, 106; *French* v. *Campbell*, 2 H. Black, 178; *Hecht* v. *Taubel*, 26 Atl., 20 (N. J.); *B. & M. River R. R. Co.* v. *Boestler*, 15 Ia., 555; *Patterson* v. *Augusta Water Company*, 30 Me., 91; *Richardson* v. *Boston Chemical Laboratory*, 9 Met., 42; *Ames et al* v. *Brooks et al*, 143 Mass., 348; *Jennings* v. *Bowman*, supra.

In an action at law, when a promise is expressly conditioned upon an agreed condition to be performed within an expressed time, this Court cannot say that it is immaterial which the parties have made by their contract material. *Hill* v. *Fisher*, supra.

Whenever a paper can be understood from its own words, its interpretation, the promise it makes, the duty or obligation it imposes, is a question of law for the court. *State* v. *Patterson*, 68 Me., 473; *Hoyt* v. *Tapley*, 121 Me., 239.

We think, therefore, that the jury should have been instructed that, as a matter of law, the mutual promises to pay were conditioned upon a condition precedent, upon it being proved by December 31, 1921, whether the number of feet of logs in the lake on May 14 exceeded or fell short of the stated number, and the jury should not have been instructed that time was not, as a matter of law, of the essence and that whether the parties intended it to be of the essence was a question of fact for them to determine.

Third exception. The defendant contended that what is a reasonable time is a question of law for the court; and that if it were held that time was not of the essence the plaintiff would have only a reasonable time after the date fixed in the contract, that a delay of eight months after December 31 had expired was more than a reasonable delay. The Court refused and instructed, "with the knowledge which you have of the case and the business, it is a ques-

tion for you to determine whether that delay so expressed was an unreasonable delay, if you find that time was of the essence of the contract." To the refusal to instruct and to the instruction given, the defendant excepted.

What is a reasonable time is a question of law when the facts are ascertained; under other conditions it is a mixed question of law and fact, for submission to a jury; the requisite diligence is governed by the circumstances of the particular case. *Motor Co.* v. *Stanyan,* 123 Me., 346, 350; *Fisk* v. *Williams,* 75 Me., 217.

As the question of unreasonable delay would arise only if the defendant waived the performance of the condition, it is unnecessary, in view of the rulings on the questions raised in connection with an alleged waiver, to consider further this exception. *Attwood* v. *Clark,* 2 Green, 249; *Watson* v. *Fales,* 97 Me., 366; 13 C. J., 690.

The fourth and fifth exceptions can be considered together. They raise the questions of waiver of the time limit fixed and whether a consideration therefor was necessary.

The defendant requested an instruction that there was no evidence for the consideration of the jury that the defendant waived the time limitation in the contract. The court refused to do so, and instructed the jury that the question of waiver would arise only in case the jury found that the plaintiff must observe at his peril the date, December 31; and, if they so found, that time was of the essence, they must, in order for it to be waived, further find a consideration for the waiver, and left it to the jury to find both a waiver and consideration.

The defendant also requested an instruction that the fact the plaintiff shipped lumber to the defendant after December 31, 1921, and paid commission could not constitute consideration for the waiver as the defendant had agreed to do so in the contract. The court refused to do so, and stated to the jury he had instructed them to the contrary quite fully.

To these refusals to instruct and the instructions given, the defendant excepted.

Waiver and its essential requirements have been defined by our court. It is a voluntary or intentional relinquishment of a known right, *Burnham* v. *Austin,* 105 Me., 199; *Hurley* v. *Farnsworth,* 107 Me., 309; and further it is essentially a matter of intention,

*Libby* v. *Haley*, 91 Me., 333; *Stewart* v. *Leonard*, 103 Me., 132; *Burnham* v. *Austin*, supra; *Hurley* v. *Farnsworth*, supra. It may be proved by express declaration or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive. *Burnham* v. *Austin*, supra; *Hurley* v. *Farnsworth*, supra. Waiver is a matter of fact. It is for the jury to say what the conduct of the party against whom a waiver is claimed means or signifies; what his words, acts, or non-action under the circumstances naturally and logically indicate to have been his intention, whether they show a voluntary choice not to claim a right or a voluntary abandonment of it. *Libby* v. *Haley*, supra.

It has been said that "Waiver is where one in possession of any right, whether conferred by law or contract, and of full knowledge of the material facts, does or forbears to do something inconsistent with the existence of the right or of his intention to rely upon it, and thereupon he is said to have waived it, and is precluded from claiming anything by reason of it afterwards. And it may be added that under such circumstances, if a renunciation of the waiver would work to the injury or disadvantage of another who relied upon it, the party making the waiver is estopped to deny it." *Smith* v. *Phillips National Bank*, 114 Me., 302.

It perhaps is more accurate to say that it is where one in possession of any right whether conferred by law or contract, and of full knowledge of the material facts, does something or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely on it.

While there may be all the elements of waiver in estoppel, the converse may not be true; for a party may so conduct himself as to show an intention to waive his rights when the adverse party has not been deceived or misled thereby and no estoppel would arise, although a waiver may well be found. In voluntary waiver the result is intended; in waiver by estoppel in pais, the conduct may have been voluntary but the effect, as a matter of law, may not have been intended. The cases do not all recognize this distinction and apply the doctrine of waiver and estoppel indiscriminately in furtherance of justice. *Libby* v. *Haley*, supra.

It is stated that to constitute a waiver, there must be either a

contract supported by consideration or the necessary elements of estoppel. 27 R. C. L., Sec. 5, page 910; *Williston on Contracts*, Vol. II, Sec. 679, page 1314, note 26. If the "estoppel" of this alternative means the ordinary equitable estoppel, a necessary element of which is the misstatement of an existing fact, this court has not so held. Nor as appears from an analysis of the language and of the facts in the decisions of this court, cited above, is the definition of waiver to be understood as implying that any voluntary or intentional relinquishment of a known right is necessarily effective. Such an implication would be of course unsound. A waiver may, as appears in some cases, have also the elements of equitable estoppel. A waiver may be supported by consideration. But it will appear from the decisions of this court that to constitute a waiver where there is no consideration, there must be a promise or permission, express or implied in fact, supported only by action in reliance thereon, to excuse performance in the future of a condition or of an obligation not due at the time, when the promise is made, or to give up a defense not yet arisen, which would otherwise prevent recovery on an obligation. Though there is often said to be in such case an estoppel and the case said to be distinguishable from a waiver, there is not a true estoppel for there is no misrepresentation of an existing fact. It may be called "a promissory estoppel." *Williston on Contracts*, Vol. II, Sec. 678, 679, 689-692. We think that this distinction will harmonize many decisions and will clarify what appears to be some confusion of definition and expression.

In the instant case, waiver might have been considered with reference to two periods of time, before and after December 31. If before, the waiver would be the relinquishment of a right to insist upon the performance of the condition before the time within which it must be performed had passed and before a defense of nonperformance had arisen; if after, it would be the relinquishment of a defense already arisen.

If there was any promise or agreement before December 31, either express or implied, on the part of the defendant that it would not insist on the excess logs being determined before that date, if the defendant had indicated by words or acts, while performance of the condition was still possible that its non-performance would not affect his own action under the contract, and the plaintiff acted upon that understanding, "a promissory estoppel" would result

and no consideration would be necessary.

If, however, it is claimed that the defendant agreed after December 31 to waive its defense of non-compliance with the contract as to time, it is in effect a new undertaking, and a consideration was essential to support it.

The Court in instructing the jury on this question told them they might consider the acceptance of the lumber for sale after December 31 without inquiring as to when it was measured, whether before or after December 31, and the further acceptance of lumber for sale during the season of 1922 as evidence of a waiver and that they might regard the fact that it received a benefit by so doing in the form of commissions on the sale of the lumber as a sufficient consideration for the waiver.

Obviously, this was erroneous. The defendant was bound under the first part of the contract to sell the lumber and was entitled to its commission thereunder. This had nothing to do with the second part of the contract and would not be considered as having any effect on it nor could the receipt of benefits therefrom be considered as any consideration for a modification or waiver of the second part of the contract.

These erroneous instructions that time was not of the essence of this contract and, if it was, that a waiver of it might be found from the acceptance of lumber for sale under the first part of the contract, and the failure, as there was, to call the jury's attention to the question of a possible waiver before December 31, must have misled the jury, and, as there was no conclusive evidence of a prior waiver, the erroneous instructions must be deemed prejudicial.

Various expressions have been used in the books in defining what constitutes prejudicial error and the burden resting on the excepting party to establish it.

In *Toole* v. *Bearce*, 91 Me., 209, 214, it was stated that the burden resting on the excepting party required him to show that, but for the ruling complained of, the verdict and judgment might properly have been different. This does not require him to show it probably would have been different, but only that there was evidence on which the jury might have arrived at a contrary verdict, which, in law, would be permitted to stand.

The rule laid down in the case of *Starkey* v. *Lewin*, 118 Me., 87,

91, therefore, appears to be a correct statement of what constitutes prejudicial error, viz., if the jury *may* have been misled and, but for the ruling, might have properly arrived at a contrary verdict, the excepting party is aggrieved.

This rule is also further recognized in *Toole* v. *Bearce,* supra, at the close of the opinion, "If that does not appear (that is, that a contrary verdict might have properly been found) and the verdict in the end must have been against the excepting party, the excepting party was not prejudiced;" and in *Coombs* v. *Fessenden,* 114 Me., 347, 354, where the court said the excepting party was prejudiced where it could not be held "with unmistakable certainty that the (excepting party) must necessarily ultimately fail."

Or conversely, unless it appears as a matter of law that a contrary verdict could not have properly been found, if correct instructions had been given, then the excepting party was aggrieved, and the exceptions must be sustained.

The verdict of the jury may have been based on their finding that time was not of the essence of the contract, or that it was of the essence and there was a waiver after December 31 supported by the consideration of acceptance of lumber for sale after December 31. Such bases were erroneous.

We think further that, if correct instructions had been given, the jury on the question of a waiver prior to December 31 might, on the evidence, have properly found for the defendant; that is, a verdict for the defendant could not, as a matter of law, be set aside on that ground.

It cannot, therefore, be determined upon what the verdict was based. *Farr* v. *Whitney,* 260 Mass., 193, 197.

Our conclusion makes a consideration of the motion unnecessary.

The mandate must be

*Exceptions sustained.*