[No. 24925. Department Two. October 3, 1934.]

W. H. COWLES, *Respondent*, v. E. S. MATTHEWS, *Appellant.*[1]

*Danson, Lowe & Danson (William V. Kelley, Jr.,* of counsel), for appellant.

*Wakefield & Witherspoon (Harry T. Davenport,* of counsel), for respondent.

HOLCOMB, J.—This action is upon a promissory note executed by Electro-Kold Corporation, and at the time of its execution was endorsed by E. S. Matthews, president of the corporation. The note was for three thousand dollars, dated December 20, 1930, due thirteen days later on January 2, 1931, and was signed by Electro-Kold Corporation by E. S. Matthews, President, and H. L. Masterson, G. M. No place of payment is specified in the note, and it contains no waivers of any kind. The note was transferred by the payee to respondent after maturity.

The complaint alleges that appellant, at the maturity of the note and at numerous times thereafter, stated that he was liable, agreed to pay it and waived omission of the payee of the note to give him notice. It is also alleged that Electro-Kold became insolvent about fourteen months after the execution of the note, and that appellant set off his liability on the note against his liability to Electro-Kold Corporation, and that no funds were realized by respondent by way of dividends from the insolvent corporation.

Appellant admitted the execution of the note and the endorsement thereon, denied any waiver of giving notice of non-payment, and alleged affirmatively that the note was not presented for payment when due, and no notice of dishonor given. It was also alleged affir-

matively that respondent was a large stockholder in the Electro-Kold Corporation, that it was a going concern at the time of the maturity of the note, and that respondent could have collected it, but failed to do so.

The money was borrowed by appellant at his own instance. When he borrowed the money for the company, it had a number of accounts receivable which were coming in at the end of the month, and he then was sure that the company would repay the money it had borrowed. The burden of planning the company's finances was upon appellant's shoulders. He tried to get company funds to pay the note when due. Masterson, the secretary, would not pay such an item as this three thousand dollar note without consulting appellant.

On the due date, McKinley, cashier of the Cowles Publishing Company, called up the Electro-Kold office by telephone and asked for appellant. Appellant was out of the office at the time, and Masterson, who talked with McKinley, told McKinley that he would have appellant get in touch with McKinley immediately; that, as soon as appellant returned to the office, Masterson informed him and requested him to communicate with McKinley. Upon his return, appellant saw McKinley. It was well understood between them that the company had not paid the note. Appellant explained to McKinley why the company had not paid it, but that it hoped to pay it shortly.

Throughout 1931, the company was a going concern, doing a considerable gross business. In the early part of 1932, however, it made an assignment for the benefit of its creditors. Respondent filed a claim on the note in suit, but no dividend and no part of the note has ever been paid.

Appellant was liable to Electro-Kold Corporation upon unpaid stock subscriptions to the extent of about

seven thousand dollars. After the maturity of the note in suit, appellant claimed the right to set off further liability upon the note against his stock subscription. When the assignment to creditors was made in 1932, the unpaid balance of appellant's stock subscription was approximately the amount due on respondent's note with interest.

The assignee of creditors allowed the setoff of this note to be made by appellant, and he did not pay the balance of his stock subscription to the assignee.

More than a year after the maturity of the note, but prior to the assignment to creditors, appellant wrote the following letter:

"Dear Mr. McKinley:          January 12, 1932.

"Will you kindly let me know if the writer personally endorsed also the $1,000 note, as well as the $3,000 note, both of which were given you by this company in December, 1930.

"I recall endorsing the $3,000 note, but do not have any recollection about the $1,000 note.

"Very truly yours,
E. S. Matthews, President."

The trial court refused to find that, subsequent to the maturity of the note, and at various times thereafter, appellant orally stated that he was endorser on the note and might be liable thereon. To the contrary, the trial court positively found, after hearing witnesses McKinley, for respondent, and appellant, for himself, between whom there was some disagreement, and weighing their credibility, that, at the maturity of the note and at numerous times thereafter, appellant stated that he was liable upon the note, agreed to pay it, and waived omission of the Cowles Publishing Company to make due presentment or to give him due notice of dishonor, if there was any such omission. There is no preponderance of evidence against the

finding made by the trial court, and it cannot be disturbed here.

The trial court also found, upon uncontroverted testimony, that the Electro-Kold Corporation, being insolvent, made an assignment of all of its assets for the benefit of its creditors; that appellant was indebted to the corporation on his stock subscription in a sum approximating the amount due on the note in suit; that he claimed to offset his obligation upon the note against his indebtedness to the insolvent; that no funds were realized by the assignee for distribution to creditors; that the administration of the assignee has been closed and respondent recovered nothing on his claim.

Upon these and other findings favorable to respondent, the trial court concluded, as a matter of law, that respondent is entitled to judgment, and the same was accordingly granted.

On appeal, to reverse the judgment, appellant insists that there was no presentment of the note to the maker (Electro-Kold Corporation) at the time of maturity, which releases the endorser; and that there was no waiver of notice.

To sustain his contention, appellant quotes and relies upon the following provisions of the negotiable instruments law, now codified as Rem. Rev. Stat.:

"§ 3461. Presentment—When Necessary. Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; . . . But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers." [P. C., § 4141.]

"§ 3462. Time of presentment. Where the instrument is not payable on demand, presentment must be made on the day it falls due." [P. C., § 4142.]

"§ 3463. Presentment, sufficiency of. Presentment for payment, to be sufficient, must be made—

"1. By the holder, or by some person authorized to receive payment on his behalf.

"2. At a reasonable hour on a business day;

"3. At a proper place as herein defined;

"4. To the person primarily liable on the instrument, or if he is absent or inaccessible, to any person found at the place where the presentment is made." [P. C., § 4143.]

"§ 3464. Same, place of. Presentment for payment is made at the proper place— . . .

"3. Where no place of payment is specified and no address is given and the instrument is presented at the usual place of business or residence of the person to make payment. . . ." [P. C., § 4144.]

"§ 3465. Exhibition of instrument necessary. The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it." [P. C., § 4145.]

Another material section of the negotiable instruments law is Rem. Rev. Stat., § 3473, which, so far as pertinent, reads: "Presentment for payment is dispensed with— . . . 3. By waiver of presentment, express or implied." [P. C., § 4153.]

Appellant asserts that there is a distinction between the foregoing provisions relating to waiver of notice of dishonor, which may be made either before or after the time of giving notice has arrived, and after the omission to give due notice, but that Rem. Rev. Stat., § 3473 [P. C., § 4153], excuses presentment only when it *has been* waived.

There was here, of course, no express waiver.

Respondent relies upon several further provisions of the negotiable instruments law, Rem. Rev. Stat., §§ 3499 and 3505 [P. C., §§ 4180, 4186], the pertinent parts of which read:

§ 3499. "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied."

§ 3505. "Notice of dishonor is not required to be given to an indorser in either of the following cases—
. . .

"2. Where the indorser is the person to whom the instrument is presented for payment; . . . "

Respondent supports this position upon two propositions: (1) Appellant, when he indorsed the note, impliedly waived presentment of the note to the company for payment, and notice of dishonor; (2) After maturity of the note, appellant waived any omission of presentment or notice.

With the first proposition, we are not in accord, because there are no stipulations of waiver in the note in suit. There was nothing of the kind to waive when the note was generally endorsed. However, that, as we view the case, is unimportant.

Although many authorities are cited by appellant to support his contentions, most of them are inapt and not decisive of the question here presented.

We concede that the following propositions under the negotiable instruments law are now to be deemed as settled:

(1) That presentment of a note to the maker, sufficient to bind the indorser, cannot be made by a telephone demand upon him at his place of business, where the note is payable, although he is notified that the note is in possession of the communicant and ready for delivery. *Robinson v. Lancaster Foundry Co.*, 152 Md. 81, 136 Atl. 58, 50 A. L. R. 1196. See notes commencing on page 1200.

The cited case held that, since the negotiable instruments law expressly provides that the instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it, such a demand by telephone is not a valid presentment at the time and place of pay-

ment to bind an indorser. To the same effect is *Gilpin v. Savage,* 201 N. Y. 167, 94 N. E. 656, 34 L. R. A. (N. S.) 417, Ann. Cas. 1912A, 861. See, also, *Citizens' Bank v. First National Bank,* 135 Iowa 605, 113 N. W. 481, 13 L. R. A. (N. S.) 303.

(2) It is also well settled that, although formerly, by the great weight of authority and in this state, one who endorsed or "backed" a note was generally considered a joint maker, by the terms of § 63 and § 64 of the negotiable instruments law (our Rem. Rev. Stat., §§ 3454 and 3455 [P. C., §§ 4134, 4135]), he is to be regarded as an endorser only, and entitled to all the rights and privileges of one occupying that relation. See, also, Brannan's Negotiable Instruments Law (5th Ed.), 716 and 725.

(3) The liability of an endorser being conditional, a waiver of presentment is distinct from a waiver of notice; and a waiver of notice of dishonor does not include a waiver of due presentment. See cases cited in 5 Uniform Laws Annotated, Negotiable Instruments Act, page 506.

However, the concession of those propositions is not decisive of this case.

It was well settled by the law merchant at common law that notice of non-payment of a negotiable note may be waived by the indorser. The rights of an indorser of a negotiable promissory note to have due presentment and notice before liability attaches to him thereon, are annexed by law for the benefit of the indorser, and under the terms of the negotiable instruments act such presentment and notice may be expressly, or impliedly, waived. 3 R. C. L. 1237.

"The indorser may waive presentment and notice after the date of maturity of the note with like effect as if done prior to that date. The Negotiable Instruments Law provides that 'notice of dishonor may be

waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied.' In some jurisdictions it is held that the waiver when made after the maturity of the note must be with full knowledge of the indorser's laches and that it requires a new consideration. But it seems better to accord with the nature of the indorser's contract to hold that a new consideration is not required to support a waiver of protest before or after maturity of the paper. When the indorser waives this right to notice he does not create a new liability which requires a new consideration, like the waiver of absolute and strict conditions precedent in contracts, as they are construed at common law.

"Waiver, as has been stated, may be oral as well as written; it also may be implied from any acts or conduct clearly calculated to mislead the holder and prevent him from treating the note as he otherwise would." 3 R. C. L. 1238.

The general rule is also stated in 8 C. J. 696, as follows:

"The party for whose benefit demand and notice is required may waive the necessity therefor, either before or after the maturity of the instrument, without consideration, either orally or by writing, and either by a separate instrument, provisions in or on the instrument, oral statements, or by conduct evidencing an intention to waive, or by words or conduct constituting an estoppel, regardless of the intent."

And, further, page 709:

"It is well settled that, if the drawer or indorser, with full knowledge of the neglect of the holder to exercise due diligence, promises to pay the bill or the note, he is held to have waived the consequence of the laches and will stand in the same position as if he had been regularly charged by presentment, demand, and notice, or, as it has been said, such a promise to pay will serve either as presumptive evidence of due demand and notice or as a waiver of laches, according to the circumstances of the case. The same rule applies

where the maker of a note promises to pay it after maturity, so far as waiver of presentment to him is concerned, where presentment is necessary to hold the maker.''

Cases are cited in a note appended to the above text to the effect that the promise to pay a bill or note after the due date with knowledge of the facts of non-presentment for payment, operates as a waiver of such non-presentment; and removes entirely the effect of any negligence in making the demand or giving the notice.

Although there was no formal or legal demand under the negotiable instruments law, and present-ment of the note for payment to the maker on the day it was due, according to the well supported finding of the trial court appellant then and thereafter promised to pay it. He knew that it had not been paid.

''A promise by an indorser to pay a note or bill, dis-penses with the necessity of proving a demand on the maker or drawer, or notice to himself. . . . An unconditional promise by the endorser of a bill to pay it, or an acknowledgment of his liability, and knowl-edge of his discharge by the laches of the holder, will amount to an implied waiver of due notice of a demand of the drawee, acceptor, or maker.'' *Sigerson v. Mathews,* 61 U. S. 496, 15 L. Ed. 989.

In a case decided by the same court, before the en-actment of the negotiable instruments laws, it was stated, *arguendo:*

''Although, accurately speaking, there can only be a waiver of demand and notice by the indorser be-fore the note is due, yet, after it is due, he can waive proof of them; or, what is more to the purpose, he can so act towards the holder of the note as to render the fact that demand was not made or notice given, wholly immaterial.'' *Yeager v. Farwell,* 80 U. S. 6, 20 L. Ed. 476.

In the last cited case, the *Sigerson* case, *supra,* was reaffirmed, and held that, if the indorser, with full knowledge of the fact that no demand had been made or notice given, makes a subsequent promise, he is liable, and cannot, when sued, set up as a defense the want of such demand and notice; and to the same effect are the decisions of the courts in this country generally. The opinion then continued:

"Applying the principle of these decisions to the admitted facts of this case there is no difficulty in charging the indorsers. Their promise to pay was expressly made after they knew of the laches of the maker of the note, and they cannot now be allowed to repudiate it.

"The most formal demand and notice could have been of no service to them, for they knew the demand would be useless, and the notice could only tell them what they were advised of without it."

This is true in the instant case. Appellant well knew that he was an indorser of the note; that it had not been paid and he had explained the reason therefor to respondent's assignor and afterwards offset the amount of it with interest against his own liability for unpaid stock subscriptions to his insolvent company. It does not lie in his mouth now to say that he should be released from liability because of lack of valid presentment and demand of payment with an exhibition of the note thereof to his company, the original maker thereof.

Neither section of the law providing for implied waivers, for the benefit and protection of the endorser, is more important than the other.

In *Thompson v. Curry,* 79 W. Va. 771, 91 S. E. 801, a case involving some of the same provisions of the negotiable instruments law as here involved, among other things that court held that, to render such an indorser liable, presentment for payment at the time

and place designated in the paper and notice of dis-
honor are essential, unless he waives these require-
ments; and this he may do, expressly or impliedly,
either before or after the maturity of the instrument.
It is also there held that, as to the indorsers, the facts
were sufficient to show such a waiver after maturity.
Among other things, that court said:

"The authorities are abundant to the effect, and the
statute itself indicates, that an effectual waiver may
occur either before the time for giving notice has ar-
rived or after the omission to give due notice, and that
the waiver may be express or implied; and, further,
that no consideration is necessary to make it effectual.
An indorser other than one who transfers the title can,
after the instrument is due, waive proof of demand
and notice."

Cases were then cited from several courts of high
repute to that effect, and to the effect that an oral
promise by the indorser of a promissory note to pay
the same, made, without being misled, after maturity
of the note, and with the knowledge that there has been
no demand for payment upon the maker, or notice of
non-payment given to himself as indorser, and of all
other material facts, is a waiver of the want of demand
and notice, and renders him liable on the note without
a new consideration, although the note is payable on
demand, and he does not know that, upon such a note,
the law required demand and notice.

The court then continued:

"The decisions in the cases cited, it is true, antedate
the enactment of the uniform negotiable instruments
act; but that fact is immaterial, because the act, in ad-
dition to the recognition of the doctrine of waiver,
does not attempt to determine all the details that tend
to fix the liability of an indorser, and, in so far as ap-
plicable now, that liability remains as it was at the
common law, except as modified by that act. However,
whether the common law principles apply or not, and

we are satisfied they do, a Kentucky case holds that an indorser of a negotiable instrument, who after the time for giving notice of dishonor declares his intention to pay the note, waives notice of dishonor, regardless of whether he had knowledge that he had been discharged by reason of failure to receive notice of dishonor. *Doherty v. Bank* [170 Ky. 810] 186 S. W. 937. . . .

"There is also the same degree of unformity among the decisions holding unnecessary a consideration to support a waiver. *Burgettstown National Bank v. Nill*, 213 Pa. 456 [63 Atl. 186, 3 L. R. A. (N. S.) 1079, 110 Am. St. Rep. 554, 5 Ann. Cas. 476], citing numerous authorities. For additional authorities, see note to this case in 5 Ann. Cas. 478. Besides, the rule seems to be general that a waiver of notice of nonpayment of a note also constitutes a waiver of presentment for payment in accordance with the implied provisions of the contract of indorsement. [Citing Pennsylvania, Florida, Indiana, Iowa and Massachusetts cases] 8 C. J. 696."

We conclude that it seems to be well settled that, since the passage of the negotiable instruments law, even though there was no presentment of the note to appellant and demand for payment when due, it was waived by his express acknowledgment of liability both directly and indirectly in the assignment proceedings, although not by express agreement with respondent, and that the findings and conclusions of the trial court are right.

█ Furthermore, under the provisions of Rem. Rev. Stat., § 3505 [P. C., § 4186], where the indorser is the person to whom the instrument is presented for payment, it has been held in Michigan, *Whitney v. Chadsey,* 216 Mich. 604, 185 N. W. 826, that, where the indorser is the officer to whom the note would have been presented, that provision of Michigan's comparable section applies. See, also, *Westinghouse Electric & Mfg. Co. v. Hodge,* 181 Mo. App. 232, 167 S. W. 1186;

*In re Swift,* 106 Fed. 65, a case arising in Massachusetts where the comparable section of that state applies.

The many cases cited by appellant cannot be reviewed within the proper scope of this opinion. Realizing the importance of uniformity in court decisions on the uniform negotiable instruments law, they have been examined and found not to be applicable to the question at bar.

The judgment of the trial court is affirmed.

BEALS, C. J., TOLMAN, and GERAGHTY, JJ., concur.

MILLARD, J., dissents.

