WALL INVESTMENT COMPANY v. MINNIE L. SCHUMACHER, Executrix of the Last Will of WILLIAM M. SCHUMACHER, Appellant.—125 S. W. (2d) 838.

Division One, March 8, 1939.

*H. A.* and *C. R. Hamilton* for appellant.

*James J. Seeley* and *Claudio Delitala* for respondent.

GANTT, J.—Action originating in the Probate Court of the City of St. Louis. On October 4, 1934, the Wall Investment Company filed a claim in said court against the estate of Wm. M. Schumacher, deceased. The claim had for its foundation Schumacher's endorsement of a note. The probate court denied the claim and the company appealed to the circuit court. On a trial in said court judgment was for the plaintiff company for $11,780, which included interest. Defendant appealed.

It is not claimed that the owner of the note either made demand of the maker for payment or that notice of nonpayment was given to Schumacher. The only question for review is whether or not there was substantial evidence tending to show that Schumacher waived presentment for payment and notice of dishonor as required by law. The rule may be stated as follows:

"A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [First National Bank v. Maxwell, 123 Cal. 360, 55 Pac. 980, 69 Am. St. Rep. 64; Kilpatrick v. Railroad, 38 Neb. 620, 57 N. W. 664, 41 Am. St. Rep. 741; Viele v. Insurance Co., 26 Iowa, 9, 96 Am. Dec. 83; Swedish American Natl. Bank v. Koebernick, 136 Wis. 473, 117 N. W. 1020, 128 Am. St. Rep. 1090.] It has been said that the law of waiver is a 'technical doctrine introduced and applied by courts for the purpose of defeating forfeitures.' It has also been said that in insurance cases the

courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But, even in insurance cases, the intention to waive must plainly appear, or else the acts or conduct relied upon as constituting waiver must involve some element of estoppel." [Schwab v. Brotherhood of American Yeomen, 305 Mo. 148, 1. c. 155, 264 S. W. 690.]

"To constitute a waiver, there must be an intention to relinquish the right, or there must be words or acts calculated to induce the other contracting party to believe, and which deceive him into the belief, that the holder of the right has abandoned it; and the party deceived must have acted on his belief, so that an assertion of the right will inflict upon him a loss he would not have sustained if its holder had not appeared to relinquish it." [Rice v. Fidelity & Deposit Co., 103 Fed. 427, 1. c. 435.]

The facts follow: On November 15, 1928, Schumacher endorsed a note for $15,000 and six semi-annual interest notes, each for $450. They were secured by a deed of trust on real estate in St. Louis valued, at the time of the endorsements, at $25,000. The first four interest notes were paid by the maker but default was made in the payment of the fifth interest note due May 15, 1931. On July 24, 1931, James C. Seeley, an attorney, wrote a letter to Schumacher in which he stated that the writer represented the Wall Investment Company, who owned the principal note and the unpaid interest notes. In said letter he made demand for payment of said interest note by Schumacher, who did not answer the letter. At the time of the trial in the circuit court, Schumacher was not living, and the only testimony in the case on the question of waiver was the testimony of Mr. Seeley, who testified that after writing said letter he had a conversation with Schumacher at the office of the Wall Investment Company, with reference to the matter. He further testified on the question as follows:

"I discussed with Mr. Schumacher the unpaid interest note of $450, and he stated to me, at that time, that he was not in a position to pay this note, but that he would be able to do so later.

"By the COURT (Q.): What do you mean by this note? A. I am speaking now of Plaintiff's Exhibit B.

"By MR. DELITALA (Q.); What is the interest note? A. That is the interest note of $450. At that time I further questioned Mr. Schumacher, in view of the fact that an interest note was not being paid, I further questioned him about the payment of the principal note for $15,000, which would be due in November, and he stated that he would make arrangements to take care of it by that time. *That was the nature of the conversation, the general nature of it.*" (Italics ours.)

Thereafter and on October 10, 1931, the Wall Investment Company caused the deed of trust on the real estate securing the notes to be foreclosed for nonpayment of the fifth interest note, and at the sale

the property was bid in for $5500. Of course, this amount paid the fifth and sixth interest notes and the balance was endorsed as a credit on the principal note.

After said foreclosure and on November 2, 1931, Mr. Seeley wrote another letter to Schumacher in which he again stated that he represented the owner of the notes; that the deed of trust had been foreclosed; that there was due $11,230.93, including interest and delinquent taxes for the years 1929 and 1930, and demanded that Schumacher pay the balance due on the principal note. This letter also was not answered by Schumacher. Mr. Seeley testified with reference to this letter as follows:

"Q. Did you have some other conversation with Mr. Schumacher subsequently? A. Yes; after the property had been foreclosed I wrote Mr. Schumacher another registered letter, calling attention to the foreclosure, and requesting the payment of the balance due on the notes, and that conversation I had subsequently, it was some time in November of '31, or the first part of December, 1931, I don't recollect, it was out at his undertaking establishment on Natural Bridge Road.

"Q. *Can you state what the nature of that conversation was?* A. In that conversation I reviewed, with Mr. Schumacher, the fact that the notes which he had previously told me he would take care of had not been paid and foreclosure was necessary, and had been accomplished, and I asked him then for the payment of the balance on these notes, and he told me then that he was having some difficulty with financing, and he had an apartment house on Pine Street that he was about to lose, and he also referred to some money that he owed to an aunt of his, or a relative, and stated that as soon as these matters were straightened out he expected, and would take care of this obligation. Those were the two conversations, and the two places where I discussed the matter with Mr. Schumacher."

It should be stated that the trial below proceeded on the theory that the principal note matured before the conversations with Schumacher.

Plaintiff company argues that the statements of Schumacher that "he would make arrangements to take care of it by that time" and that he "would take care of this obligation," is substantial evidence tending to show that he waived presentment and notice of dishonor. We do not think so. The said statements are of doubtful meaning. By them he may have intended to state only that he would make arrangements to take care of his conditional obligation as endorser of the note. Furthermore, there was no evidence tending to show that Schumacher, by either word or act, caused the company to dispense with the presentment and notice of dishonor required by law to fix the liability of an endorser. Furthermore, Mr. Seeley testified only to the general nature of the statements made by Schumacher. In other words, he did not undertake to state what was actually said by Schumacher during the conversations with reference to the notes.

There was no substantial evidence tending to show that presentment and notice of dishonor were waived. [January v. Todd, 1 Mo. 567; Faulkner v. Faulkner, 73 Mo. 327; Orthwein v. Nolker, 290 Mo. 284, 234 S. W. 787; Ladd v. Anderson (Tex. Civ. App.), 89 S. W. (2d) 1041; Freeman v. O'Brien, 38 Iowa, 406; Isham v. McClure, 58 Iowa, 515; Porter v. Moles, 151 Iowa, 279; McMillan v. Montgomery, 121 Ore. 28, 253 Pac. 879; Colbath v. Stebbins Lbr. Co., 127 Me. 406, 144 Atl. 1; Rice v. Fidelity & Deposit Co., 103 Fed. 427, 43 C. C. A. 270; G. S. Johnson Co. v. Nevada Packard Mines Co., 272 Fed. 291; Isom v. Johnson, 205 Ala. 157; Parson, Rich & Co. v. Lane, 97 Minn. 98.]

Plaintiff cites cases as follows: Wilson v. Huston, 13 Mo. 146; Yeager v. Farwell, 20 L. Ed. 476, 13 Wall. 6; Belch v. Roberts, 191 Mo. App. 243, 177 S. W. 1062; Orthwein v. Nolker, 290 Mo. 284, 234 S. W. 787; Sigerson v. Mathews, 61 U. S. 496, 20 How. 496, 15 L. Ed. 989; Hay v. Bankers' Life Co., 207 Mo. App. 277, 231 S. W. 1035. Those cases are distinguishable on the facts.

The judgment should be reversed. It is so ordered. All concur.